Annette M. COLE, Plaintiff-Appellant,

v.

DELAWARE LEAGUE FOR PLANNED PARENTHOOD, INC., a Corporation of the State of Delaware, and the Medical Center of Delaware, Inc., General Division (a/k/a Wilmington General Hospital), Defendants-Appellees,

v.

Lisa M. MacGUIGAN, Executrix for the Estate of John M. MacGuigan, M.D., Defendants-Appellees.

Supreme Court of Delaware.

Originally Submitted: Oct. 21, 1986.
Remanded: Dec. 18, 1986.
Resubmitted: April 9, 1987.
Decided: Aug. 24, 1987.

---

Dennis D. Brogan (argued) and Joseph F. Wusinich III, pro hac vice, of Wusinich and Brogan, West Chester, Thomas S. Neuberger, Wilmington, and John S. Grady, Dover, for plaintiff-appellant.

John A. Parkins, Jr. (argued) of Richards, Layton & Finger, Wilmington, for defendants-appellees Delaware League for Planned Parenthood, Inc. and Wilmington Medical Center.

William Prickett (argued) of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellee Estate of John M. MacGuigan.

Before HORSEY, MOORE, and WALSH, JJ.

HORSEY, Justice:

This is a tort action for personal injury attributed to an abortion that allegedly caused plaintiff to become sterile or incapable of bearing children. The medical procedure complained of was performed in 1977 upon plaintiff when a minor; and plaintiff did not file suit until 1984. The only question before us is whether, on the present record, plaintiff's claims against the several defendants are time barred by the applicable statutes of limitation. We hold that plaintiff's claims are time barred as to the

health care providers but not as to Planned Parenthood of Delaware. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

Plaintiff, Annette M. Cole, appeals from an Order of Superior Court granting, following limited discovery, summary judgment in favor of the three defendants, Delaware League for Planned Parenthood, Inc., a Delaware corporation ("DLPP"), the Estate of John M. MacGuigan, deceased physician, and The Medical Center of Delaware, Inc. ("Medical Center"). The Court held that plaintiff's several claims for damages for personal injury against each of the three defendants were time barred by the controlling statutes of limitations. The Court ruled that plaintiff's claims against the physician and Medical Center were governed and time-barred as a matter of law by 18 *Del.C.* § 6856, the statute of limitations of the Delaware Health Care Malpractice Act of 1976 (18 *Del.C.*, chapter 68). Finding plaintiff's claim against DLPP to be controlled by the two-year limitation of 10 *Del.C.* § 8119, the Court ruled plaintiff's claim to be time barred as a matter of law by application of the time of discovery rule of *Layton v. Allen*, Del.Supr., 246 A.2d 794 (1968). DLPP cross-appeals from Superior Court's ruling (dictum) that plaintiff's claim against DLPP is not controlled by 18 *Del.C.* § 6856 based on the Court's finding that DLPP is not a "health care provider" within the meaning of 18 *Del.C.*, c. 68.

Following original briefing and argument, this Court remanded the case to Superior Court to consider an issue not previously raised by the parties or considered by the Trial Court: whether the three-year time limitation of 10 *Del.C.* § 8106 controls plaintiff's claim of negligent counseling against DLPP, rather than the two-year limitation of section 8119. Superior Court, by letter decision dated February 19, 1987, concluded that plaintiff's claim against DLPP, though couched in terms of a claim for negligent and inadequate counseling concerning pregnancy and abortion—as to which DLPP held itself out as an expert— was nevertheless controlled by the two-year limitation of section 8119 rather than the three-year limitation of section 8106. The case was then returned to this Court and resubmitted following supplemental briefing, limited to plaintiff and DLPP, on the issue of the controlling statute of limitations.

\* \* \*

The personal injuries for which plaintiff seeks recovery from the defendants severally, while based on distinct causes of action [medical malpractice by the physician and hospital defendants and negligent counseling by DLPP], are all attributed to an abortion performed upon her, then a seventeen-year-old minor, by the physician at the Medical Center in February 1977 following referral by DLPP. The Complaint alleges that, as a result of the direct negligence of the physician and/or The Medical Center and an indirect tort committed by DLPP, plaintiff's fallopian tubes became infected and the infection, in turn, caused her to become sterile or incapable of bearing children. Plaintiff asserts that she would not have had an abortion had DLPP not gratuitously assumed a fiduciary duty to counsel her and then breached that undertaken duty. She asserts that DLPP failed to inform her "of alternatives to an abortion, the risks of an abortion, biological information regarding the development of the unborn child, and possible long-term complications." Plaintiff's claim against DLPP is premised largely, if not entirely, on application to the operative facts of the *Restatement (Second) of Torts*, § 323.[1] So applied, plaintiff asserts that DLPP is equally liable along with the direct tortfeasors for the physical harm resulting

---

1. Section 323 of the *Restatement (Second) of Torts* states:

   § 323. **Negligent Performance of Undertaking to Render Services**

   One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

   (a) his failure to exercise such care increases the risk of such harm, or

   (b) the harm is suffered because of the other's reliance upon the undertaking.

from DLPP's asserted failure to exercise reasonable care in counseling her and for having "pushed her" to have an abortion. Plaintiff did not file suit until September 21, 1984 for the physical harm attributed to the medical procedure performed February 18, 1977.

## I

█ We conclude that Superior Court was correct as a matter of law in granting judgment for the Estate of John M. MacGuigan, deceased, and Wilmington Medical Center on the ground that such claims are time barred by 18 *Del.C.* § 6856.[2] Clearly, the physician and the Medical Center qualify as "health care providers" under section 6801(5). As to those defendants, section 6856 stands as a bar to plaintiff's malpractice action since it was filed more than three years after the alleged negligence occurred, even assuming plaintiff's injury was inherently unknowable. *Dunn v. St. Francis Hospital, Inc.*, Del.Supr., 401 A.2d 77 (1979).

█ We also find lacking in merit plaintiff's constitutional attack on the application of the health care statute of limitations to her notwithstanding that she was seventeen years old at the time of her abortion. *Reyes v. Kent General Hospital, Inc.*, Del.Supr., 487 A.2d 1142 (1984), requires rejection of her equal protection claim; and *Dunn v. St. Francis Hospital, Inc.*, supra, is dispositive of the issue of a rational relationship for the legislation's universal application, except for children under the age of six. No claim is stated for fraudulent concealment or misrepresentation sufficient to toll the running of the statute. *Shockley v. Dyer*, Del.Supr., 456 A.2d 798 (1983).

## II

█ Superior Court also correctly determined that DLPP is not a "health care provider" entitled to invoke the statute of limitations of 18 *Del.C.* § 6856. To qualify as a health care provider as defined under section 6801(5), DLPP must be an entity licensed by the State under either Title 16 or Title 24 and that provides "health care or professional services." The record establishes that the employee of DLPP from whom plaintiff sought counseling for her pregnancy was neither a nurse nor a physician; and neither DLPP nor the counselor in question was licensed under the Health Care Act ("the Act") as a health care provider. Though DLPP concedes it is not a health care provider, it argues that because the abortion was performed by a physician and licensed health care provider, the protection of the statute should be extended to DLPP "to avoid unfair or unworkable results." DLPP reasons that a non-health care provider should be permitted to avail itself of the same shortened statute of limitations that is available to the physician and hospital to whom plaintiff was referred—particularly since plaintiff seeks to recover essentially the same measure of damages for personal injury from DLPP that it seeks from the health care provider physician and hospital.

The question of DLPP's coverage under the Act is not a matter of fairness or even logic but of legislative intent to be gleaned from the language of the Act, its legislative history, and its underlying purpose. The Superior Court has previously addressed that issue in the context of a similar contention of a pharmaceutical manufacturer claiming exclusion from the Act's provisions. In *Keys v. Lynam*, Del.Super.,

2. 18 *Del.C.* § 6856 provides:

**§ 6856. General limitations.**

No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of malpractice shall be brought after the expiration of 2 years from the date upon which such injury occurred; provided, however, that:

(1) Solely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred, and not thereafter; and

(2) A minor under the age of 6 years shall have until the latter of time for bringing such an action as provided for hereinabove or until the minor's 6th birthday in which to bring an action.

C.A. No. 79C–AU–25 (Jan. 12, 1982), Justice Walsh, then Judge of the Superior Court, concluded that the term "health care provider" within section 6856 of Title 18 was intended by the General Assembly to afford protection exclusively for "those professionals in direct personal contact with the patient" and whose insurance malpractice premiums were of dominant concern to the General Assembly, *i.e.*, hospitals, physicians, and other similarly situated parties who are members "of a profession whose legal liability in treating a patient is measured by the professional standards of his locality or community." We find the reasoning in *Keyes* has equal application to DLPP so as to require rejection of its claim of coverage under the Act.

Alternatively, DLPP argues, and the Superior Court originally ruled, that the limitation governing plaintiff's suit against it was 10 *Del.C.* § 8119. On remand, on our direction, the Trial Court explicitly considered but rejected 10 *Del.C.* § 8106[3] as controlling plaintiff's claim against DLPP.

### III

■ Plaintiff Cole's claims against the several defendants, including DLPP, sound in tort and seek the recovery of damages for the "physical harm resulting" to plaintiff from the several acts of negligence of the defendants. Plaintiff concedes that her claims against DLPP, as well as the physician and the Medical Center, are exclusively for personal injuries. Plaintiff's characterization of her injuries, rather than the nature of her underlying cause (or form of action) or its theoretical basis, is controlling. The manner in which a claim for personal injury arises and whether it results directly or indirectly from the alleged tortfeasor's conduct is immaterial.

■ Section 8119,[4] applies to all claims for personal injury, without exception, and "regardless of the theoretical basis underlying the requested remedy." *Johnson v. Hockessin Tractor, Inc.*, Del.Supr., 420 A.2d 154, 156 (1980); *Patterson v. Vincent*, Del.Super., 61 A.2d 416 (1948) (construing Rev.Code 1935, § 5133, the predecessor to section 8119, as applying to all claims for personal injury without regard to the manner in which the injury arose and whether caused by force direct or indirect); *see Heritage v. Board of Education*, D.Del., 447 F.Supp. 1240, 1242 (1978) (section 8119 "supercedes section 8106 in cases in which both could be deemed applicable...."); *McNeill v. Tarumianz*, D.Del., 138 F.Supp. 713 (1956); *see also DeMoss v. News-Journal Co.*, Del.Supr., 408 A.2d 944 (1979) (holding that section 8119, not section 8106, governs the time limitation upon an action for personal injury resulting from defamation).

Notwithstanding that plaintiff's claim against DLPP is for negligent counseling and alleged breach of duty to provide competent professional services, her claim falls within section 8119, not 8106. She seeks damages for personal injury and not damages for loss of property. *Isaacson, Stolper & Co. v. Artisan's Savings Bank*, Del. Super., 330 A.2d 130 (1974). Plaintiff's inclusion of a civil rights claim against defendants under both federal and state Constitutions does not permit a different result. *Marker v. Talley*, Del.Super., 502 A.2d 972, 974 (1985) (holding that a section

---

**3.** 10 *Del.C.* § 8106 states:

§ 8106. **Actions subject to 3 year limitation.**
No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or re-

sulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108–8110, 8119 and 8127 of this title.

**4.** 10 *Del.C.* § 8119 states:

§ 8119. **Personal injuries.**
No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained; subject, however, to the provisions of § 8127 of this title.

1983 claim is, for purposes of statutes of limitations, a claim for personal injury controlled by section 8119, relying upon *Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254, 266 (1985).

A comparison of the language of section 8106 with section 8119 discloses their different purposes. Section 8106 is couched in terms of the nature of the cause of action or the underlying claim. In contrast, section 8119 is a result-oriented statute premised not on forms of action (trespass, detenue, debt not evidenced by a record, action based on a promise, etc.), but rather upon the nature of the injury suffered—injury to the person. Finally, the "subject, however" proviso at the end of section 8106 results in section 8119 personal injury claims overriding or being excluded from those claims otherwise governed by section 8106.

Thus, plaintiff's claim against DLPP being a claim of injury to the person, section 8119, not section 8106, is the controlling statute. However, for the reasons that follow, we conclude that, in the context of a summary judgment disposition, Superior Court erred in finding the claim against DLPP to be time barred on the present record as a matter of law by application of the time of discovery rule.

### A.

■■■ Under the time of discovery rule of *Layton v. Allen,* Del.Supr., 246 A.2d 794 (1968), and its progeny, an inherently unknowable injury is discoverable for purposes of setting in motion the time limitation of section 8119 when the harmful effect of an otherwise unknowable injury "first manifests itself and becomes physically ascertainable." *Collins v. Wilmington Medical Center, Inc.,* Del.Supr., 319 A.2d 107, 109 (1974). For the statute of limitations to begin to run, plaintiff is not required to have knowledge of a causal relationship between the initial injury and the defendants' tortious conduct. She is simply required to have become cognizant of the fact of having sustained an injury in the course of her operative procedure or recuperation. The statute is not tolled un-

til such time as plaintiff acquires knowledge of a causal relationship between the physical manifestation of injury and a given defendant's conduct, as Superior Court ruled.

Applying this test to the present record, summary judgment may only be granted where the moving party establishes that it is entitled to judgment as a matter of law and upon a showing of no material issue of fact based upon a record read in a light most favorable to the nonmoving party, plaintiff herein. *Moore v. Sizemore,* Del. Supr., 405 A.2d 679 (1979).

Under our standard of appellate review of a grant of summary judgment, we must review the entire record to determine whether under all the circumstances, and viewing the facts in a light most favorable to the nonmoving party, the moving party is entitled to summary judgment. *Brunswick Corp. v. Bowl-Mor Corp.,* Del.Supr., 297 A.2d 67 (1972). "Moreover, when issues are decided on summary judgment, the parties must have a reasonable opportunity to present all facts pertinent to the motion." *Mann v. Oppenheimer & Co.,* Del.Supr., 517 A.2d 1056, 1060 (1986). Here, discovery to date consists entirely of the deposition testimony of plaintiff, her husband, and various medical and hospital reports admitted in evidence by agreement of the parties in the course of their depositions. None of the defendants has been deposed nor has the testimony of plaintiff's treating physicians, both gynecologists, been taken even though portions of their medical records are in evidence.

### B.

In reciting the relevant facts presently of record, we rely heavily upon the unreported letter decision of Superior Court dated February 24, 1986. In January 1977, plaintiff, then seventeen years old, discovered she was pregnant. At her boyfriend's urging that she have an abortion and that she not inform her parents, plaintiff went to DLPP for a pregnancy test and counseling. The test confirmed that plaintiff was pregnant and, after several discussions with a DLPP counselor, plaintiff decided to have

an abortion. The counselor recommended Dr. John M. MacGuigan, scheduled an appointment for plaintiff at the Medical Center, and secured plaintiff's signature to a release form. (See Exhibit A.)

The abortion was performed on February 18, 1977 at the Medical Center by Dr. MacGuigan without apparent complications. On her discharge from the hospital, plaintiff was given a printed instruction sheet by the hospital indicating that she was to take tetracycline for six days to prevent infection. Plaintiff contends that the Medical Center never gave her the antibiotic. In the course of two follow-up visits to the doctor's office, plaintiff told him that she was feeling fine except for some pain "every once in a while." Dr. MacGuigan responded that this was normal and concluded that plaintiff seemed to be doing well.

In June 1979, plaintiff was married and, desiring to have children, ceased her prior practice of using contraceptives. Sometime thereafter, and continuing into 1980, plaintiff experienced approximately ten episodes of very sharp pain in the lower left abdomen, accompanied by swelling. When she sought outpatient treatment in an emergency room setting, she was informed that she was probably suffering from gastritis or the flu.

After trying in vain for two years to become pregnant, plaintiff, on January 12, 1981, consulted Dr. Jeffrey Komins, a gynecologist. Dr. Komins performed blood tests and a pap smear on plaintiff and a semen analysis of her husband. Finding no abnormalities, he planned a laporascopy to determine if there was an obstruction of plaintiff's fallopian tubes. Plaintiff, however, failed to return after her second examination in February 1981, apparently due to dissatisfaction with her physician-patient relationship.

On June 21, 1982, plaintiff consulted another gynecologist, Dr. Glassem Vakili. She informed Dr. Vakili (presumably in response to an inquiry from him) that to the best of her knowledge, she did not have an infection after the abortion. He performed a salpingogram on July 30, 1982, which showed blockage of both fallopian tubes and, according to his records, he concluded that plaintiff's infertility was due to bilateral tubal occlusion. On September 24, 1982, Dr. Vakili performed a laporascopy, which confirmed his previous findings as to the cause of plaintiff's infertility. Plaintiff claims that Dr. Vakili did not inform her of the results of the laporascopy until a follow-up visit on October 11, 1982. She states that at that time she was told for the first time that "because there appear to be no other known ailments or infections, an infection resulting from the abortion must have caused her infertility."

On the basis of this evidence, the Trial Court ruled:

> Assuming for purposes of [DLPP's] motion that plaintiff suffered from an inherently unknowable injury, tubal occlusion or infertility caused by an abortion related infection, knowledge of the injury and its causal relationship to the defendants can surely be attributed to the plaintiff as of the time of the salpingogram on July 30, 1982. The salpingogram's demonstration that both fallopian tubes were blocked and plaintiff was sterile, in contrast to her past ability to become pregnant, and the combination of episodes of abdominal pains, in the years following the abortion, the normal semen count of Mr. Cole, and the questions asked of plaintiff by Drs. Komins and Vakili as to whether she had any infections following the abortion, all served to put her on notice of a likely causal relationship between her infertility and the conduct of the defendants. Therefore, the action filed against DLPP on September 21, 1984 is barred by the two year statute of limitations set out at § 8119.

### C.

■ In our view, the record, together with the reasonable inferences to be drawn therefrom, when viewed in a light most favorable to plaintiff, does not support the Trial Court's finding, namely that plaintiff "surely" knew or should have known by July 30, 1982 that she had sustained a personal injury in the 1977 abortion suffi-

cient to commence the running of the two-year time limitation of section 8119. Our reasons are basically twofold: (1) due to limited discovery, we find critical pieces of evidence and findings relating thereto to be missing or simply undeveloped; and (2) we find there to be a conflict between plaintiff's deposition testimony and her treating physician's medical reports.

For example, plaintiff, in her deposition testimony, states that the "dye test" (*i.e.*, the salpingogram) performed by Dr. Vakili upon her on July 30, 1982 showed only that one fallopian tube was blocked and that Dr. Vakili informed her that it was necessary that he perform a laparoscopy in order to determine if both of her fallopian tubes were blocked. That operative procedure, not performed until September 27, 1982, apparently established for the first time the fact of blockage of both fallopian tubes. Yet plaintiff states that Dr. Vakili did not inform her of the results of the laparoscopy until October 11, 1982.

Further, a conflict exists in the present record between plaintiff's testimony and her physician's records. Dr. Vakili's office notes of July 30 indicate that "the salpingo-gram showed both tubes blocked." Similarly, the radiologist's report dated July 30, 1982 states that there was a "bilateral tubal occlusion." What is missing in the evidentiary chain is whether Dr. Vakili on or about July 30, 1982 accurately informed plaintiff of the results of the salpingogram.

In his notation of October 11, 1982, Dr. Vakili explicitly states that at that time he told plaintiff about the tubal occlusion. However, the doctor's notes of July 30, made after performing the salpingogram, do not indicate any disclosure to plaintiff of a tubal occlusion. Furthermore, there is no indication that plaintiff received a copy of the radiologist's July 30 report.

If plaintiff is chargeable with knowledge of the harmful manifestation of the abortion from the date of the July 30, 1982 salpingogram, under *Allen, supra* and *Collins, supra,* her complaint filed on September 21, 1984 is untimely. However, with the present record's conflicting evidence as to when plaintiff learned, following Dr. Vakili's July 30 salpingogram, that both fallopian tubes were blocked, this unresolved issue of fact precludes the grant of summary judgment.

Therefore, we reverse the Superior Court's grant of summary judgment in favor of DLPP; and we remand the case for further development of the record upon the issue of when plaintiff first knew or should have known that she had sustained an injury as a result of her 1977 abortion. The merits of plaintiff's underlying claim against DLPP is not before us.

\* \* \*

AFFIRMED IN PART; REVERSED IN PART; and REMANDED.

EXHIBIT A

### Delaware League for Planned Parenthood

I, _Annette Foster_ have requested

a referral for an abortion procedure. Information about abortion and

abortion facilities has been explained to me by a staff person at DLPP.

No guarantee or assurance has been made to me by the staff person as to

the results that may be obtained. I fully understand that it is my choice

and release DLPP from any responsibility.

_2.3.77_
Date

_2.3.77_
Date

*Annette Foster*
Signature of Patient

*Mimi Otto / Counselor*
Witness