**John H. BENGE, M.D., Defendant Below, Appellant,**

v.

**Alice S. DAVIS and Roderick K. Davis, her husband, Plaintiffs Below, Appellees.**

Supreme Court of Delaware.

Submitted: Nov. 9, 1988.
Decided: Jan. 24, 1989.

Wayne A. Marvel (argued) and Victor F. Battaglia, Biggs & Battaglia, Wilmington, on behalf of appellant.

C. Waggaman Berl, Wilmington, on behalf of appellees.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ. (constituting the Court en banc).

HOLLAND, Justice:

This appeal involves a medical malpractice action brought by the plaintiffs-appellees, Alice S. Davis ("Davis") and her husband, Roderick K. Davis, against the defendant-appellant, John H. Benge, M.D. ("Dr. Benge"). This is an interlocutory appeal from the Superior Court's denial of a motion for summary judgment made by Dr. Benge. In his motion, Dr. Benge contended that the Davis complaint was time barred under the applicable statutes of limitations, 18 *Del.C.* § 6856. The Superior Court denied the motion for summary judgment on the grounds that, under the doctrine of continuous negligent medical treatment, the Davis complaint was timely filed.

We find that the Superior Court incorrectly calculated the time when the statute of limitations commences to run on a medical malpractice claim alleging a continuous course of negligent medical treatment. We conclude that the Davis medical malpractice claim against Dr. Benge is time barred. Accordingly, the decision of the Superior Court is reversed.

*Facts*

On January 23, 1984, Davis consulted Dr. Benge concerning a "dull ache" in her breast. At that time, Dr. Benge performed a breast examination on Davis. Dr. Benge told Davis that he could not find anything wrong. According to Davis, Dr. Benge suggested that the pain was associated with her menstrual cycle. Dr. Benge recommended that Davis take aspirin for the pain.

After experiencing considerably more pain, Davis returned for another office visit and consultation with Dr. Benge on October 8, 1984. By this time, according to Davis, the pain had localized in her right breast. Her ankles and legs were also swollen. In her words, she "knew something was going haywire."

During the October 8, 1984, office visit, Dr. Benge performed another breast examination on Davis. Again, Dr. Benge told Davis that as a result of the examination, he could find nothing wrong. Davis said that Dr. Benge characterized his diagnosis of her problem during this office visit as "premenstrual syndrome." Dr. Benge continued to suggest aspirin or Tylenol as the appropriate medication. Davis could recall no suggestion by Dr. Benge as to any further treatment.

Davis stated that Dr. Benge did not refer her to another health care professional for a "second opinion." Nevertheless, on October 11, 1984, Davis consulted another physician, Dr. Charles Green ("Dr. Green"). Dr. Green examined Davis on that date and communicated to her that he had found a tumor in her breast. Dr. Green recommended to Davis that she see a surgeon. He provided her with a list of names from which to choose.

On the same day, October 11, 1984, Davis consulted a surgeon, Dr. Ruben Teixido ("Dr. Teixido"). He conducted a breast examination and confirmed Dr. Green's diagnosis that a tumor existed. Dr. Teixido scheduled Davis for an operative procedure to make a biopsy of the tumor.[1] In her deposition, Davis stated that at the end of her visit with Dr. Teixido:

I realized I wasn't in very good shape. I think it became very clear to me that— Well, all I could think of was, this is cancer. This is it. After Dr. Green and Dr. Teixido both checked me that same day and both came up with the same diagnosis, it became apparent to me that I was heading for trouble.

Q. So as of the 11th you knew you had a tumor of the right breast. Correct?

A. Yes.

Q. And you suspected it was cancerous?

A. Yes.

---

1. "Biopsy" is defined as "[t]he study of tissue taken from a living person or organism, esp. in examination for the presence of disease." The American Heritage Dictionary 181 (2d College ed. 1982).

The parties agree that October 8, 1984, was the last treatment of Davis by Dr. Benge, prior to her visits with Dr. Teixido and Dr. Green on October 11, 1984.

### The Parties' Contentions

Davis and her husband filed a complaint in the Superior Court on October 10, 1986, alleging medical malpractice by Dr. Benge. Dr. Benge moved for summary judgment on the premise that the action was time barred by the two-year statute of limitations set forth in 18 *Del.C.* § 6856. Dr. Benge suggests that the two-year limitation period began to run on October 8, 1984, the date of Davis' last visit with Dr. Benge prior to her visit with the two independent health care professionals, Dr. Green and Dr. Teixido, on October 11, 1984. Therefore, according to Dr. Benge, the Davis complaint should have been filed on or before October 8, 1986. Since Davis did not file her complaint until October 10, 1986, Dr. Benge argues that her action is barred by 18 *Del.C.* § 6856.

Davis contends that her complaint was timely because the statutory period of limitations did not begin to run until October 11, 1984, the date she visited the two independent health care professionals and learned of her breast tumor. In essence, Davis argues that the statute of limitations does not run during the period of time when a patient continues to rely upon the advice of the allegedly negligent doctor, and commences to run only at such time as the patient has "notice" of the prior negligent treatment.

### Standard of Review

In her answering brief in this Court, Davis admits that the facts have been accurately set forth in Dr. Benge's opening brief. Thus, in this case, there are no material facts that are in dispute. Appellate review of a denial of a motion for summary judgment requires an examination of the record to determine whether the moving party, in this case, the defendant-appellant, Dr. Benge, is entitled to summary judgment as a matter of law, viewing all of the facts in a light most favorable to the non-moving party, Davis. *Cole v. Delaware League for Planned Parenthood, Inc.*, Del.Supr., 530 A.2d 1119, 1124 (1987).

### The Applicable Statute of Limitations

■ The applicable statute of limitations in actions alleging medical malpractice is set forth in 18 *Del.C.* § 6856 which provides, in part, that:

No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of malpractice shall be brought after the expiration of 2 years from the date upon which such injury occurred; provided, however, that:

(1) Solely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred, and not thereafter;

. . . .

This Court has previously reviewed the case law and the legislative history prior to and surrounding the enactment of Section 6856. *Ewing v. Beck*, Del.Supr., 520 A.2d 653 (1987).

Prior to April 26, 1976, the effective date of Section 6856, Delaware law recognized a "time of discovery rule" for "inherently unknowable" injuries. *Layton v. Allen*, Del.Supr., 246 A.2d 794 (1968)). In *Ewing*, this Court concluded that when the Delaware legislature enacted Section 6856, it "knowingly changed the prior law and chose to adopt a limited hybrid statute of limitations ... [Essentially,] there is one period (two years) applicable to injuries discovered at the time of the wrongful act and a different period (three years) for 'inherently unknowable' injuries." *Ewing v. Beck*, 520 A.2d at 659 (citing *Dunn v. St. Francis Hosp., Inc.*, Del.Supr., 401 A.2d 77, 81 (1979)). Therefore, through the enactment of Section 6856, the Delaware legislature codified the "inherently un-

knowable" injury rule, also known as the "time of discovery rule", and limited it to a finite period of three years. *Ewing v. Beck*, 520 A.2d at 659 (citing *Dunn v. St. Francis Hosp., Inc.*, 401 A.2d at 79).

### Continuous Negligent Medical Treatment

■ In *Ewing*, [2] this Court was required to apply the statute of limitations set forth in 18 *Del.C.* § 6856 to a specific type of claim alleging medical malpractice. In applying the statute, this Court distinguished the continuing treatment doctrine from the doctrine of continuous negligent medical treatment. The latter doctrine was recognized as a valid basis for bringing a cause of action in Delaware alleging medical malpractice. The former doctrine was not recognized in Delaware as a valid basis for such an action. *Ewing v. Beck*, 520 A.2d at 660–64.

Under the continuing treatment doctrine, the statute of limitations begins to run at the end of a course of treatment for a condition brought about by a prior negligent act, whether or not the continuous treatment is also negligent. *Id.* at 659. On the other hand, under the doctrine of continuous negligent medical treatment, the statute of limitations runs from the last act in a "continuum of negligent medical care related to a *single condition* occasioned by negligence." *Id.* at 662 (emphasis in original). The difference between the two doctrines, for statute of limitation purposes, is that under the doctrine of continuous negligent medical treatment, the focus is limited to the last act in the negligent continuum, not the last act of any treatment. *Id.* at 663 n. 11.

A complainant invoking the continuous negligent medical treatment doctrine has the burden of alleging with particularity a course of continuing negligent medical treatment during a finite period. *Id.* at 662. In addition, the facts in the record must establish that the treatment was inextricably related so as to constitute one continuing wrong. *Id.* at 664. Once it is determined that a claim, based upon continuous negligent medical treatment, has been properly alleged, the crucial question becomes, from exactly what point in time does the statutory period of limitations begin to run?

In construing the statutory language of Section 6856, this Court has said that the phrase "the date upon which such injury occurred" refers to the date when the "wrongful act or omission occurred." *Dunn v. St. Francis Hosp., Inc.*, 401 A.2d at 80. In recognizing the validity of bringing a medical malpractice claim under the doctrine of continuous negligent medical treatment, we held in *Ewing*, that:

> the "date upon which such injury occurred" is the last act in the negligent medical continuum. Therefore, if a plaintiff has a cause of action for continuous negligent medical treatment and that fact becomes known within two years of an act in the alleged negligent continuum, the *statute of limitations begins to run for two years from the last act in the negligent continuum prior to the point in time when the plaintiff has actual knowledge of the negligent course of treatment* or in the exercise of reasonable diligence could have discovered the negligent course of treatment.

**2.** In *Ewing v. Beck,* the plaintiff, Mr. Ewing, consulted a urologist, Dr. Beck, (the defendant) concerning blood in his urine. Over a period of six years (1974–1980), the patient, under the care of Dr. Beck, underwent various tests and was hospitalized intermittently for bladder cancer. 520 A.2d at 656. In July of 1979, Mr. Ewing was referred to and consulted a radiation specialist, Dr. Cuccia. Mr. Ewing died in 1980 and a malpractice action was brought by his wife against Dr. Beck, alleging continuous negligent medical treatment for bladder cancer. Applying the doctrine of continuous negligent medical treatment, this Court concluded that

the action was time barred by the statute of limitations, 18 *Del.C.* § 6856. 520 A.2d at 667. This Court held that: (1) Mr. Ewing was charged with constructive, if not actual knowledge, of his bladder cancer on July 16, 1979, the date of his visit with Dr. Cuccia, the radiation specialist; (2) that Mr. Ewing's last visit with Dr. Beck prior to that date on which he had knowledge of his cancer and the alleged negligent course of treatment was July 10, 1979; and (3) that the two-year statute of limitations began to run on July 10, 1979, hence, barring the action instituted on August 5, 1982. *Id.* at 666–67.

*Ewing v. Beck,* 520 A.2d at 663 (emphasis added).

The *Ewing* rule requires a two-part inquiry: (1) what is the date upon which the plaintiff had actual or constructive knowledge of the negligent course of treatment and; (2) what is the date of the "last act" in the negligent continuum immediately prior to the date that the patient received knowledge, actual or constructive, of the negligent course of treatment.

In answering part one of the *Ewing* inquiry, an objective test is employed, i.e., the reasonably prudent person standard. *Id.* at 664. In addition, in determining the date of knowledge, a presumption operates that "a patient who actually consults with an independent health care provider about the same condition which is subsequently the subject matter of an alleged negligent medical continuum knew or in the exercise of reasonable diligence could have known about the prior negligent course of conduct, on [the] date of the consultation with the independent health care provider." *Id.* at 664 (footnote omitted). An answer to part two of the *Ewing* inquiry also calls for an objective analysis, i.e., what constitutes the "last act" in the negligent continuum?

### This Case

In this case, viewing the facts in the light most favorable to the non-moving party, Davis, the Superior Court assumed, *arguendo,* that Davis had alleged with particularity, an action against Dr. Benge according to the doctrine of continuous negligent medical treatment.[3] The Superior Court acknowledged that Dr. Benge's motion for summary judgment, based upon the statute of limitations, was governed by this Court's holdings in *Ewing.* The Superior Court properly concluded that the statute of limitations on the Davis claim would begin to run from the last act in the negligent continuum prior to her consultation with the independent health care providers. The Superior Court then held:

> The last treatment of Dr. Benge with regard to the alleged breast tumor prior to the visit to the independent medical experts on October 11, 1984, was on October 8, 1984. However, pursuant to [our] order in *Skolfield v. LaTonn,* ... [this] Court finds that each day which Alice Davis followed Dr. Benge's advice that she had no tumor constituted a continuation of a course of negligent treatment. Therefore, this Court determines the statute of limitation did not begin to run until October 11, 1984. Therefore the Complaint filed on October 10, 1986 was timely filed.[4]

We find that this holding is incorrect for two reasons.

First, it introduces and then confuses a concept from the continuing treatment doctrine, which the Delaware legislature has not recognized. *Ewing v. Beck,* 520 A.2d at 660. A patient's reliance *is* important under the continuing treatment doctrine. According to that doctrine, the statute of limitations does not begin to run as long as the patient-plaintiff relies on the defendant

---

**3.** We find that this assumption by the Superior Court is supported by the facts in the record.

**4.** *Davis v. Benge,* Del.Super., C.A. No. 86C–OC–59, Poppiti, J., slip op. at 3 (Feb. 25, 1988) (ORDER) (citation omitted). In *Skolfield,* the Superior Court held that the statute of limitations began to run from the date of the patient-plaintiff's visit to the independent health care provider. *Skolfield v. LaTonn,* Del.Super., C.A. No. 85C–OC–103, Poppiti, J. (Aug. 10, 1987) (ORDER). This Court affirmed the result in the *Skolfield* case, because using either date (the date of the patient's last visit with the defendant-doctor *or* the date of the patient's first visit with the independent health care provider), the statute of limitations barred the plaintiff's claim. *Skolfield v. LaTonn,* Del.Supr., 535 A.2d 408 (1987) (ORDER). However, in affirming the judgment of dismissal, this Court held that the proper application of the *Ewing* rule required a different analysis than had been employed by the Superior Court. *Id.* This Court pointed out that when a claim is based upon continuous negligent medical treatment, the limitation periods of Section 6856 begin to run "from the date of [the] plaintiff's last consultation with [the defendant-doctor] *next preceding* his consultation with an independent health care provider", not from the date of the plaintiff's first consultation with an independent health care provider. *Id.* Therefore, although the Superior Court judgment in *Skolfield* was affirmed, the precedential value of the Superior Court's decision was eliminated by the reasoning in this Court's subsequent order which only affirmed the result.

health care provider for any treatment. The continuing treatment doctrine provides that the statute of limitations begins to run from the last act of treatment by the defendant health care provider, whether or not that last act was negligent. *Id.* at 659.

■ Thus, under the continuing treatment doctrine, it is the last act of the defendant which activates the running of the statute of limitations. However, the Superior Court's holding in this case tolled the statute of limitations beyond the last act of treatment by the defendant and commenced the running of the statute only after an independent health care provider was consulted. Even under the pristine doctrine of continuing treatment, if the statute of limitations commences to run with the last act of treatment by the *defendant* health care provider, it has begun to run *before* the *independent* health provider has been consulted.

Second, and most importantly, the Superior Court was incorrect in holding that each day that a patient relies upon a defendant health care provider's advice constitutes an *"act"* of that health care provider. The word "act" has been defined as "[t]o perform; to fulfill a function; to put forth energy; to move, as opposed to remaining at rest; ... a thing done or established." *Ballentine's Law Dictionary* 17 (3d ed. 1969). This definition and the general understanding of the word makes it clear that an "act" is a form of affirmative conduct.[5] The "last act," which triggers the statutory period of limitations, in a claim based upon continuous negligent medical treatment, must be an *affirmative* happening or event.[6] In the context of health care treatment, the term "act" can take a variety of forms, for example: surgery (*Cf. Dunn v. St. Francis Hosp., Inc.,* Del.Supr., 401 A.2d 77 (1979)); a prescription for medication (*Cf. Oakes v. Gilday,*

Del.Super., 351 A.2d 85 (1976)); an emergency room visit (*Cf. Reyes v. Kent General Hosp., Inc.,* Del.Supr., 487 A.2d 1142 (1984)); and an office visit or consultation (*Ewing v. Beck,* Del.Supr., 520 A.2d 653 (1987).

The patient's reliance is not the health care provider's act. The problem with the Superior Court's holding to the contrary is readily apparent from an example of its application. Under the Superior Court's reasoning in this case, if Davis had relied upon Dr. Benge's advice and had not seen an independent health care provider for a period of five years, the statute of limitations would not *have begun* to run until that latter date, five years after her visit with Dr. Benge. Such a result would be inconsistent with the intention of the Delaware legislature to modify the "inherently unknowable" injury rule of *Layton v. Allen* and limit it to three years in 18 *Del.C* § 6856. *Ewing v. Beck,* 520 A.2d at 659. When the Superior Court denied Dr. Benge's motion for summary judgment in this case, it misconstrued the applicable law, as set forth in 18 *Del.C.* § 6856 and as construed by this Court in *Ewing.*

■ Since the material facts in this case are not in dispute, this Court must now apply the law to those undisputed facts. This requires the two-part inquiry provided for in *Ewing.* With respect to part one, the date the plaintiff had knowledge of the negligent course of treatment, the record is undisputed that Davis had actual knowledge of prior negligent treatment on October 11, 1984. This is the date Davis visited the two independent health care professionals, Dr. Green and Dr. Teixido, and learned of her breast tumor. With respect to part two of the *Ewing* inquiry, the "last act in the negligent continuum" prior to the date of knowledge, in this case, is the office visit

---

5. The American Heritage Dictionary 76 (2d College ed. 1982) defines "act" as "the process of doing or performing something; an action." That dictionary also points out that the nouns, act and action, are distinct in meaning. "An act is the deed accomplished by means of an action; when Brutus killed Caesar, he committed the act of murder by means of the action of stabbing." *Id.* In the context of this case, the act of

medical malpractice is accomplished by the action of treatment.

6. We acknowledge that an "act of omission" can be a valid basis for a plaintiff's medical malpractice claim. However, that alleged "act of omission" must occur within the context of an affirmative happening or event.

or consultation which Davis had with Dr. Benge on October 8, 1984.

"[I]f a plaintiff has a cause of action for continuous negligent medical treatment and that fact becomes known within two years of an act in the alleged negligent continuum," the two-year period of limitation applies. *Ewing v. Beck,* 520 A.2d at 663. "[T]he statute of limitations begins to run for two years from the last act in the negligent continuum *prior* to the point in time" when the plaintiff consulted the independent health care provider. *Id.* at 663. The October 8, 1984, office visit was the last act of Dr. Benge in the alleged negligent continuum before Davis consulted the independent health care providers on October 11, 1984. The two-year limitation period began to run on October 8, 1984. *See Ewing v. Beck,* 520 A.2d at 663. Since the Davis complaint was filed on October 10, 1986, her cause of action is time barred by 18 *Del.C.* § 6856. Courts have no alternative but to enforce the statute of limitations enacted by the legislature in accordance with its terms. *Ewing v. Beck,* 520 A.2d at 660.

### Conclusion

The decision of the Superior Court denying the motion for summary judgment made by Dr. Benge is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.