**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3167
_____

SHERYL SMITH,
Appellant

v.

ANDREW MCGILL WHELAN
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-11-cv-01188)
District Judge: Honorable Richard G. Andrews
_____

Submitted Under Third Circuit L.A.R. 34.1(a)

March 20, 2014

Before:   CHAGARES, GREENAWAY, JR., and VANASKIE, Circuit Judges

(Filed:  May 7, 2014)
_____

OPINION
_____

VANASKIE, Circuit Judge

Sheryl Smith appeals the District Court's grant of summary judgment in favor of

defendant-appellee Andrew McGill Whelan, her former boyfriend, on claims of

negligence, fraud, and misrepresentation arising from his transmission of genital herpes ("HSV-2") to her. The District Court determined that Smith's suit, brought more than three years after Smith was diagnosed with HSV-2, was barred by the relevant Delaware statutes of limitations. Smith argues that there are genuine disputes of facts material to whether Whelan's conduct throughout their relationship constituted fraudulent concealment of his tortious conduct, precluding summary adjudication of the limitations question. We disagree, and will therefore affirm the District Court's judgment.

I.

Because we write primarily for the parties, we will recount only those facts necessary to our analysis.

Smith and Whelan began dating in May 2008 and had unprotected sexual intercourse for the first time on May 3, 2008. Smith alleges that Whelan was aware at the time that he was a carrier of HSV-2, but did not inform her prior to their sexual contact. Smith testified at her deposition that she requested that Whelan use a condom during sexual intercourse following their second date on May 14, 2008. In response, Whelan informed her that he was sterile and there was therefore "no reason" for them to use a condom. App. 269.

On October 10, 2008, when the two were still dating, Smith's gynecologist informed her that she had tested positive for HSV-2. Smith asked her gynecologist whether he believed Whelan had given it to her, as she "hadn't had sex with anybody in a really long time except for [Whelan]." App. 303-04. Her gynecologist informed her that

2

it was possible. Smith acknowledged at her deposition that, following the diagnosis, she had recognized "[l]ogically" that Whelan was "the only person I've slept with for years; so obviously that's where this came from," but testified that she also "was so distraught that I didn't know who or what to think of or to suspect." App. 304.

Smith told Whelan of her HSV-2 diagnosis later the same day. Smith testified that Whelan reacted compassionately to the news, telling her that "he didn't care, that it didn't matter to him, that he still loved me, thought I was beautiful, gave me hugs and kisses and was very tender and very supportive." App. 309. Whelan also told Smith that he "wasn't sick," and that "everything was okay with him," which Smith took to mean that Whelan did not have HSV-2 and thus could not have been responsible for transmitting it to her. *Id.* Smith testified that, despite her suspicions that Whelan may have transmitted the disease to her, she "didn't want to come out and straight out accuse him without knowing for sure that that's the truth." App. 304.

Following her diagnosis, Smith suggested that the two refrain from sexual contact during periods when Smith was undergoing a herpes-related flare-up, in order to prevent Whelan from contracting the virus. Because of Whelan's acquiescence in this pattern of conduct and his failure to disclose that he had been infected with HSV-2 himself prior to sexual contact with Smith, Smith inferred that Whelan was not the source of her infection.

Smith testified that, over a year and a half later, on June 20, 2010, Whelan accidentally let slip that he had "been dealing with [HSV-2] for a long time." App. 331.

3

When pressed about his offhand comment, Whelan admitted to Smith that he had been aware that he had HSV-2 since college, several decades prior to the beginning of their relationship. Three months later, in September of 2010, Whelan and Smith separated. Smith brought this action on December 1, 2011.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of a District Court's grant of summary judgment. *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).

Under Delaware law, personal injury actions are governed by a two-year statute of limitations. Del. Code Ann. tit. 10, § 8119 (West); *Cole v. Delaware League for Planned Parenthood, Inc.*, 530 A.2d 1119, 1123 (Del. 1987) ("Section 8119 . . . applies to all claims for personal injury, without exception, and regardless of the theoretical basis underlying the requested remedy.") (internal quotation marks omitted). Fraud and misrepresentation actions are governed by a three-year statute of limitations. Del. Code Ann. tit. 10, § 8106 (West); *Krahmer v. Christie's Inc.*, 903 A.2d 773, 778 (Del. Ch. 2006).

"In addressing when an action is time-barred, a necessary first step in the analysis is determining the time when the action accrued." *U.S. Cellular Inv. Co. of Allentown v. Bell Atl. Mobile Sys., Inc.*, 677 A.2d 497, 503 (Del. 1996). Under Delaware law, "[a] cause of action in tort accrues at the time of injury." *Kaufman v. C.L. McCabe & Sons,*

4

*Inc.*, 603 A.2d 831, 834 (Del. 1992). The District Court concluded that Smith's causes of action accrued at the time of her diagnosis on October 10, 2008, and Smith does not contest this conclusion. Accordingly, we shall use October 10, 2008 as the date when Smith's causes of action accrued.

"Even after a cause of action accrues, the running of the limitations period can be tolled in certain limited circumstances." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) (internal quotations omitted). Under Delaware law, a defendant's "fraudulent concealment" may toll the running of the statute of limitations until a plaintiff's "rights are discovered or could have been discovered by the exercise of reasonable diligence." *Giordano v. Czerwinski*, 216 A.2d 874, 876 (Del. 1966). Smith urges that Whelan's conduct from the date of her diagnosis on October 10, 2008 through June 20, 2010, the date on which Whelan accidentally disclosed to her that he had been dealing with HSV-2 "for a long time," constituted fraudulent concealment of his tortious conduct, which should toll the running of the statute of limitations.

For a statute of limitations to be tolled due to a defendant's fraudulent concealment, "[f]irst it must be shown that there is sufficient evidence from which a judge or jury can find that facts were fraudulently concealed." *Studiengesellschaft Kohle, mbH v. Hercules, Inc.*, 748 F. Supp. 247, 253 (D. Del. 1990). Once a claimant demonstrates that the defendant engaged in "an affirmative act" of fraudulent concealment, the court turns to the question of "when the injured party did discover or should have discovered the injury . . . so that the time for the statute of limitations to

5

begin running can be set." *Id.* "[W]hile the Statute of Limitations may not apply when the acts complained of are fraudulently concealed from the plaintiff, such application is suspended only until his rights are discovered or could have been discovered by the exercise of reasonable diligence." *Giordano*, 216 A.2d at 876.

Accepting Smith's allegations as true, Whelan's deceptive conduct throughout his relationship with Smith may have constituted a pattern of fraudulent concealment of his alleged tortious conduct. Nevertheless, the fact that Whelan may have concealed his alleged tortious conduct does not itself mean that the running of the statute of limitations was tolled for the duration of his fraudulent concealment. The District Court correctly applied Delaware law by also analyzing whether Whelan's pattern of obfuscation would have been sufficient to disturb Smith's inquiry notice of the source of her injury. "[A] plaintiff bears the burden of showing that the statute was tolled, and relief from the statute extends only until the plaintiff is put on inquiry notice." *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007). Because inquiry notice exists as soon as a plaintiff's rights "could have been discovered by the exercise of reasonable diligence," the date at which a plaintiff in fact becomes subjectively aware of the source of his or her injury is not determinative. *Krahmer v. Christie's Inc.*, 911 A.2d 399, 407 (Del. Ch. 2006) (internal quotation marks omitted).

We agree with the District Court that Smith was on inquiry notice that Whelan was the likely source of her injury at the time of her diagnosis on October 10, 2008.[1] The sexually-transmitted nature of the injury, taken together with Smith's testimony that she had not engaged in sexual contact with anyone besides Whelan in the two years leading up to her diagnosis, provided Smith with sufficient information to alert her that Whelan was the most likely source of her injury.

We recognize that at the time of her diagnosis, it may have been difficult for Smith to acknowledge that Whelan was the most likely source of her infection, especially in light of their romantic relationship and Whelan's deceptive conduct. Smith testified that she "logically" recognized at the time that Whelan was "obviously [] where this came from" as he was the "only person I've slept with for years." App. 304. Still, she professed simultaneously holding the belief that the virus may have been transmitted to her from a sexual partner years prior, but was just then beginning to manifest symptoms.

---

[1] As the District Court observed, this case presents a somewhat unusual claim for fraudulent concealment, as Smith was aware of her injury, but not the source of that injury, during the period she argues the statute should have been tolled. This represents a departure from much of the Delaware case law on fraudulent concealment, which addresses situations where a plaintiff alleges that, during the tolling period, they had not yet realized they had been injured at all. *See, e.g.*, *Krahmer*, 911 A.2d at 403 (plaintiffs had been unaware during proposed tolling period that the painting they had purchased from defendant auction house was a forgery); *Shockley*, 456 A.2d 798 (Del. 1983) (plaintiff had been unaware during proposed tolling period that her ovaries had been removed in surgery by defendant doctor). Like the District Court, we assume fraudulent concealment may toll a statute of limitations for a plaintiff who is aware of his or her injury, so long as that concealment would have prevented the plaintiff from learning the source of his or her injury, even with the exercise of due diligence.

7

Regardless of Smith's subjective ambivalence about the source of her injury following her diagnosis, Delaware law directs us to focus on the objective question of whether the source of an injury "could have been discovered by the exercise of reasonable diligence." *Giordano*, 216 A.2d at 876. We believe that Smith had all the information necessary to put her on inquiry notice that Whelan likely had infected her as of October 10, 2008.

Although Smith's subjective knowledge is not determinative, our conclusion is reinforced by evidence in the record that Smith suspected Whelan as the source. Upon being diagnosed, Smith immediately asked her gynecologist whether he believed that Whelan was responsible for infecting her. On October 28, 2008, weeks after Whelan had denied being sick, Smith confided in her psychiatric nurse that she thought Whelan might be withholding information from her about whether he had infected her. That Smith subjectively harbored such suspicions, even in the face of Whelan's deceptive conduct, only buttresses our conclusion that the facts known to her at the time of her diagnosis put her on inquiry notice that Whelan was the likely source of her injury.

### III.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment on the ground that Smith's claims are time-barred under Delaware law.

8