**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

WALTER A. WINSHALL, et al.     )
                             )
         Plaintiff,         )
                             )
         v.              )     C.A. No.: N15C-06-137 EMD CCLD
                             )
VIACOM INTERNATIONAL, INC.     )
                             )
         Defendant.      )
                             )
                             )
                             )
                             )

Submitted: November 26, 2018
Decided: February 25, 2019

*Upon Plaintiff Walter A. Winshall's Motion for Partial Summary Judgment*
***DENIED***

*Upon Defendant Viacom International Inc.'s*
*Motion for Summary Judgment*
***GRANTED IN PART***

Colin R. Hagan, Esquire, David J. Shlansky, Esquire, Shlansky Law Group, LLP, Chelsea, Massachusetts, David H. Holloway, Shlansky Law Group, LLP, Wilmington, Delaware *Attorneys for Plaintiff Walter A. Winshall, et al.*

Robert A. Atkins, Esquire, Steven C. Herzog, Esquire, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York, Stephen P. Lamb, Esquire, Daniel A. Mason, Esquire, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Wilmington, Delaware *Attorneys for Defendant Viacom International Inc.*

**DAVIS, J.**

## I. INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the

Court. The action involves disputes over the merger of Viacom International, Inc. ("Viacom")

and Harmonix Music Systems in 2006 ("Harmonix"). Walter A. Winshall is the representative

of the former stockholders of Harmonix and brought this action on June 14, 2015. Mr. Winshall raises three claims for breach of a merger agreement and one claim for malicious prosecution. Viacom argues judgment should be granted in Viacom's favor because: (i) all of the claims are barred by the statute of limitations; and (ii) the claims for breach of the merger agreement are barred by *res judicata*. Viacom also contends that the malicious prosecution claim is not sufficiently pleaded. On June 1, 2018, the parties filed cross-motions for summary judgment (respectively, "Viacom's Motion" and "Mr. Winshall's Motion" and collectively, the "Motions"). Viacom's Motion seeks summary judgment on all counts and Mr. Winshall's Motion seeks summary judgment on two breach of contract claims. On November 26, 2018, the Court held a hearing on the Motions. At the conclusion of the hearing, the Court took the Motions under advisement.

For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Viacom's Motion. In addition, the Court **DENIES** Mr. Winshall's Motion.

## II. RELEVANT FACTS

### A. PARTIES, JURISDICTION AND CHOICE OF LAW

Viacom is a global entertainment company with television and film operations.[1] Viacom is a Delaware corporation with its principal place of business in New York.[2] Harmonix was a video game company that merged with Viacom on September 20, 2006 under a merger agreement (the "Merger Agreement").[3] Mr. Winshall is a former shareholder in Harmonix and is the Stockholders' Representative for former Harmonix stockholders (the "Harmonix Stockholders") pursuant to the terms of the Merger Agreement.[4]

---

[1] Verified Civil Complaint ¶ 22.
[2] *Id.*
[3] *Id.* ¶ 4.
[4] *Id.* ¶ 21.

Under the Merger Agreement, Viacom would pay earn-out payments (the "Earn-Out Payments") for the years 2007 and 2008 to the Harmonix Stockholders.[5] The Merger Agreement provided how the Earn-Out Payments were to be determined and how disputes would be settled. Section 2.4 provided:

(a)     Determination of 2007 Earn-Out Payment Amount.  No later than fifteen (15) days after the preparation or receipt by the Surviving Corporation and Parent of all information necessary to calculate the 2007 Earn-Out Payment Amount, Parent shall prepare and deliver to the Stockholders' Representative a statement (the "2007 Earn-Out Statement") setting forth the calculation of the 2007 Earn-Out Payment Amount, together with information necessary to calculate the 2007 Earn-Out Payment Amount.  Subject to Section 10.8(a), Parent agrees to promptly provide the Stockholders' Representative with reasonable access to all work papers and supporting documentation relating to the 2007 Earn-Out Statement and such other documentation, in each case as the Stockholders'' Representative may reasonably request in order to assess the accuracy of the 2007 Earn-Out Statement.  If the Stockholders' Representative disagrees with the calculation of the 2007 Earn-Out Payment Amount, it must deliver to Parent, within twenty (20) days after the date the Stockholders' Representative received the 2007 Earn-Out Statement, a written description of each such disagreement (the "2007 Summary of Issues").  In connection with any dispute resolution regarding the 2007 Earn-Out Payment Amount, the Stockholders' Representative will not dispute any additional issues or amounts other than the 2007 Summary of Issues submitted to Parent within the twenty (20) day-period described above.  If no such 2007 Summary of Issues is submitted within such twenty (20) day-period, then Parent's calculation as set forth on the 2007 Earn-Out Statement shall be deemed final.  If the Stockholders' Representative has determined that it agrees with the calculation prior to the expiration of the twenty (20) day-period described above, the Stockholders' Representative may provide Parent with a written statement to this effect in order to initiate the payments pursuant to Section 2.4(d) of this Agreement.

(b)     Determination of 2008 Earn-Out Payment Amount.  No later than fifteen (15) days after the preparation or receipt by the Surviving Corporation and Parent of all information necessary to calculate the 2008 Earn-Out Payment Amount, Parent shall prepare and deliver to the Stockholders' Representative a statement (the "2008 Earn-Out Statement") setting forth the calculation of the 2008 Earn-Out Payment Amount, together with information necessary to calculate the 2008 Earn-Out Payment Amount. Subject to Section 10.8(a), Parent agrees to promptly provide the Stockholders' Representative with reasonable access to all work papers and supporting documentation relating to the 2008 Earn-Out

---

[5] *Id.*, Exhibit A, Merger Agreement § 2.4.  Exhibit A to the Verified Civil Complaint will be cited to as "Merger Agreement § __."

Statement and such other documentation, in each case as the Stockholders' Representative may reasonably request in order to assess the accuracy of the 2008 Earn-Out Statement. If the Stockholders' Representative disagrees with the calculation of the 2008 Earn-Out Payment Amount, it must deliver to Parent, within twenty (20) days after the date the Stockholders' Representative received the 2008 Earn-Out Statement, a written description of each such disagreement (the "2008 Summary of Issues"; the 2007 Summary of Issues and the 2008 Summary of Issues are each referred to herein from time to time as a "Summary of Issues"). In connection with any dispute resolution regarding the 2008 Earn-Out Payment Amount, the Stockholders'' Representative will not dispute any additional issues or amounts other than the 2008 Summary of Issues submitted to Parent within the twenty (20) day-period described above. If no such Summary of Issues is submitted within such twenty (20) day-period, then Parent's calculation as set forth on the 2008 Earn-Out Statement shall be deemed final. If the Stockholders' Representative has determined that it agrees with the calculation prior to the expiration of the twenty (20) day-period described above, the Stockholders' Representative may provide Parent with a written statement to this effect in order to initiate the payments pursuant to Section 2.4(d) of this Agreement.

(c) <u>Resolution of Earn-Out Disputes</u>. The Stockholders' Representative and Parent will negotiate in good faith to resolve the issues and amounts set forth in any Summary of Issues. If, after a period (the "<u>Resolution Period</u>") of twenty (20) days following the date on which such Summary of Issues is delivered to Parent, the Stockholders' Representative and Parent have not resolved each item in such Summary of Issues, then either the Stockholders' Representative or Parent will be entitled to submit the unresolved items in such Summary of Issues (the "<u>Earn-Out Disagreements</u>") to the Resolution Accountants, so long as such submitting Party provides written notice of such submission to the non-submitting party. The scope of the Resolution Accountants engagement (which shall not be an audit) shall be limited to the resolution of the Earn-Out Disagreements, and the recalculation of the 2007 Earn-Out Payment Amount or 2008 Earn-Out Payment Amount, as the case may be, in light of such resolution, and such firm shall be deemed to be acting as experts and not as arbitrators. The Resolution Accountants will resolve the Earn-Out Disagreements and render a written report on the resolved Earn-Out Disagreements within ten (10) Business Days after the date on which they are engaged or as soon thereafter as possible. The resolution of the dispute by the Resolution Accountants will be a final, binding and conclusive resolution of the parties' dispute, shall be non-appealable, and shall not be subject to further review. The costs, fees and expenses of the Resolution Accountants will be allocated by the Resolution Accountants between Parent and the Stockholders' Representative in the same proportion that the aggregate amount of such resolved disputed items so submitted to the Resolution Accountants that is unsuccessfully disputed by each such party (as finally determined by the

Resolution Accountants) bears to the total amount of such resolved disputed items so submitted.

(d) Payment of Earn-Out Payment Amounts. Promptly and in any event within five (5) days following the final determination of the 2007 Earn-Out Payment Amount or the 2008 Earn-Out Payment Amount, as applicable (and if any), Parent shall cause the Surviving Corporation to pay (in each case without any interest thereon) to (i) BAS the 2007 Advisor Earn-Out Fee or the 2008 Advisor Earn-Out Fee, as applicable, (ii) the Paying Agent (or a successor reasonably satisfactory to Parent and the Stockholders' Representative) for further payment to the holders of Capital Stock and the Warrant Holders an amount sufficient to pay the aggregate portion of the 2007 Earn-Out Payment Amount or 2008 Earn-Out Payment Amount, as applicable, payable to the holders of Capital Stock (other than shares of Restricted Stock) pursuant to Section 2.1 (c) and Section 2.2(b), as applicable, and (iii) each holder of shares of Restricted Stock and each Optionholder such Person's portion of the 2007 Earn-Out Payment Amount or 2008 Earn-Out Payment Amount, as applicable, as provided in Section 2.1(c) and Section 2.2(a), as applicable. Any amounts payable pursuant to this Section 2.4(d) shall be subject to reduction as required by applicable federal and state Tax withholding Laws, rules and regulations.

(e) Final Earn-Out Payment Amount Binding on Parties. The determination of the 2007 Earn-Out Payment Amount or the 2008 Earn-Out Payment Amount, as applicable (and if any), in accordance with the foregoing provisions of this Section 2.4 shall be final and binding on all parties, and no such party shall have the right to bring any claim disputing such final determination, in the absence of fraud or manifest error.[6]

The Merger Agreement also contained an indemnification clause at Section 8.6, which provided:

(a) Indemnification. Subject to the limitations set forth in this Article VIII, from and after the Effective Time, each of [Viacom] and MergerCo, jointly and severally, shall indemnify, defend and hold harmless each Merger Consideration Recipient against any and all Losses actually incurred or suffered by any such Merger Consideration Recipient as a result of:

(i) the breach of any representation or warranty of Parent or MergerCo set forth in this Agreement or in any Ancillary Document; and

(ii) the breach of any covenant or agreement of Parent or MergerCo contained in this Agreement or in any Ancillary Document.

(b) Certain Limitations. Parent and MergerCo shall not be obligated to indemnify any Merger Consideration Recipient pursuant to Section 8.6(a) to the extent the

---

[6] Merger Agreement § 2.4.

5

aggregate amount of all indemnifiable Losses exceeds the aggregate unpaid amount of the Merger Consideration then payable.[7]

"Losses" are defined in Section 10.7 as:

"Losses" of a Person means any and all losses, liabilities, damages, claims, awards, judgments, diminution in value, Taxes, fees, costs and expenses (including reasonable attorneys' fees and expenses, expenses of investigation, defense, prosecution and settlement of claims (including any claims under Article VIII hereof), court costs or enforcement of the provisions of this Agreement) suffered or incurred by such Person, plus any interest that may accrue on the foregoing.[8]

On September 16, 2008, Viacom paid $149,770,149.00 to the Harmonix Stockholders toward the 2007 Earn-Out Payment (the "Preliminary 2007 Earn-Out Payment").[9] Viacom's CEO wrote to the Harmonix Stockholders that "Harmonix exceeded the 2007 target" so additional payments may be forthcoming.[10] When Viacom made the Preliminary 2007 Earn-Out Payment, Viacom had not given the Harmonix Stockholders a final report calculating the 2007 Earn-Out Payment (the "2007 Earn-Out Statement").[11]

Mr. Winshall requested a copy of the final 2007 Earn-Out Statement from Viacom multiple times between September 16, 2008 and January 4, 2010.[12] Viacom told Mr. Winshall that Viacom could not yet prepare the final 2007 and 2008 Earn-Out Statements.[13] According to Viacom, Viacom was unable to prepare the final Earn-Out Statements partly due to litigation brought against Harmonix and Viacom in the Eastern District of Texas and the District of Massachusetts ("IP Litigation").[14] The IP Litigation related to certain Harmonix intellectual

---

[7] *Id.* § 8.6.
[8] *Id.* § 10.7.
[9] Verified Civil Complaint ¶ 37.
[10] *Id.* ¶ 38.
[11] *Id.* ¶ 43.
[12] *Id.* ¶ 42.
[13] *Id.* ¶ 43.
[14] *Id.*

6

property acquired by Viacom in the Merger Agreement.[15] The settlement amount in the IP Litigation would be a cost incorporated into the Earn-Out Statements.

On January 4, 2010, Viacom gave Mr. Winshall the final 2007 Earn-Out Statement with the 2007 Earn-Out Payment calculation.[16] Viacom provided the 2008 Earn-Out Statement with the 2008 Earn-Out Payment calculation on March 26, 2010.[17] Mr. Winshall disagreed with the calculations and challenged both the 2007 and 2008 Earn-Out Payments within the resolution period as set out in Section 8.6 of the Merger Agreement.[18]

Under the Merger Agreement, Mr. Winshall could make reasonable requests of Viacom for documents that would allow for an assessment of the accuracy of the Earn-Out Statements.[19] Mr. Winshall alleges that Viacom refused to produce documents, including (i) documents Viacom had provided to its auditors (e.g., Harmonix's year-end balance sheets and trial balances), (ii) Harmonix's annual financial statements and general ledgers, (iii) Viacom's memos that addressed accounting for items in the Earn-Out Statements, and (iv) records from Viacom's distributor.[20]

The Merger Agreement further provides that, if Viacom and Harmonix disagreed on the calculations, Viacom and Harmonix could select neutral accountants (the "Resolution Accountants") to determine the 2007 and 2008 Earn-Out Payment amounts.[21] The Merger Agreement pre-selected a firm, but that firm declined to serve as the Resolution Accountants on April 6, 2010.[22] Viacom and Harmonix had to agree on the use of another firm.[23]

---

[15] *Id.*
[16] *Id.* ¶ 45.
[17] *Id.* ¶ 46.
[18] *Id.* ¶¶ 48-49.
[19] Merger Agreement § 2.4(a-b).
[20] Verified Civil Complaint ¶¶ 52-54.
[21] Merger Agreement § 2.4(c).
[22] *Id.* § 2.3(b); Verified Civil Complaint ¶ 55.
[23] Verified Civil Complaint ¶¶ 56-60.

7

Mr. Winshall alleges that Viacom delayed the selection and engagement of the Resolution Accountants.[24] Mr. Winshall contends that Viacom first selected a firm that could not serve as Resolution Accountants because it was the auditor of Viacom's controlling shareholder.[25] After that, Viacom and Mr. Winshall interviewed two other firms in May 2010.[26] At that time, Mr. Winshall told Viacom that Viacom could select either one, but that Viacom selected a firm on June 29, 2010 after weeks of negotiations and then changed its mind on June 30, 2010.[27] Finally, after numerous subsequent requests from Mr. Winshall, Viacom agreed to use one of the firms on September 15, 2010.[28] Mr. Winshall alleges that to further delay the resolution of the Earn-Out Payments, Viacom then refused to sign an engagement letter with the firm and tried to insert terms into the engagement letter that would change the terms of the Earn-Out Payments in the Merger Agreement.[29]

On December 2, 2010, Mr. Winshall filed a complaint in the Delaware Court of Chancery to compel the retention of the Resolution Accountants. After that suit had been filed, on December 8, 2010, Viacom agreed to retain the Resolution Accountants.[30] Viacom and Mr. Winshall decided that the Resolution Accountants would only decide certain disputed issues.[31] Mr. Winshall thereafter filed a separate action, Case 6074,[32] in the Court of Chancery to resolve the rest of the issues.[33]

---

[24] *Id.* ¶ 56.
[25] *Id.* ¶ 57.
[26] *Id.* ¶ 58.
[27] *Id.* ¶ 59.
[28] *Id.* ¶ 60.
[29] *Id.* ¶¶ 61-67.
[30] *Id.* ¶ 68.
[31] *Id.* ¶ 67.
[32] The various Chancery Court Cases are specifically defined and discussed below.
[33] *Id.* ¶ 72.

The Resolution Accountants issued their written determination (the "Determination of the Resolution Accountants") on December 19, 2011.[34] The Resolution Accountants found that the 2007 Earn-Out Payment was $234,130,148.00.[35] This amount was $84,360,048.00 more than the Preliminary 2007 Earn-Out Payment.[36] The Resolution Accountants also found that the 2008 Earn-Out Payment was $298,813,095.00.[37]

Mr. Winshall alleges that Viacom tried to bully the Harmonix Stockholders and to obstruct the Resolution Accountants.[38] After Viacom filed Chancery Court Case 6874, Viacom told Mr. Winshall that Viacom would instruct former Harmonix Stockholders to set aside funds to repay the Preliminary 2007 Earn-Out Payment.[39] Mr. Winshall alleges that Viacom did this to pressure Mr. Winshall into settling.[40] Mr. Winshall also alleges that Viacom tried to pressure Mr. Winshall into settling by telling him that there would be adverse tax consequences for the Harmonix Stockholders if the 2008 Earn-Out Payments were delayed.[41] As for the Resolution Accountants, Viacom requested a declaratory judgment, in Case 7149, that the Determination of the Resolution Accountants was unenforceable.[42]

## B. CHANCERY COURT CASES

There were three lawsuits (the "Chancery Court Actions") in the Court of Chancery among Viacom, Harmonix, Mr. Winshall, and the Harmonix Shareholders: Case 6074, Case 6874, and Case 7149.

---

[34] Id. ¶ 76.
[35] Id.
[36] Id.
[37] Id.
[38] Id. ¶¶ 72-88.
[39] Id. ¶ 75.
[40] Id.
[41] Id. ¶ 88.
[42] Id. ¶ 78.

9

The Harmonix Stockholders filed Case 6074 on December 15, 2010 against Viacom and Harmonix.[43] Case 6074 involved three claims for relief.[44] First, the Harmonix Stockholders alleged that Viacom breached the implied covenant of good faith and fair dealing for Viacom's renegotiation of distribution fees with Electronic Arts, Inc. ("6074 Count 1").[45] The Harmonix Stockholders also requested a declaratory judgment that Viacom has no claim for indemnification for four patent infringement lawsuits involving Harmonix ("6074 Count 2").[46] Finally, the Harmonix Stockholders claimed Viacom breached the Merger Agreement by refusing to release escrow funds set up by the Merger Agreement on the basis of the pending patent suits ("6074 Count 3").[47] The Chancery Court dismissed 6074 Count 1 and granted summary judgment for 6074 Count 2 and 6074 Count 3.[48]

Viacom filed Case 6874 against the Harmonix Stockholders on September 16, 2011.[49] Viacom sought the immediate return of the Preliminary 2007 Earn-Out Payment Amount.[50] The Harmonix Stockholders asserted counterclaims, including a counterclaim that Viacom breached the Merger Agreement by failing to pay the amount of the 2007 Earn-Out Payments.[51] The Chancery Court dismissed Viacom's claim with prejudice. In addition, the Chancery Court dismissed the counterclaims without prejudice because the Harmonix Stockholders had already raised the same claims in another Chancery Court Action, Case 7149.[52]

---

[43] *Id.* ¶ 69.
[44] *Id.* ¶ 70.
[45] Opening Brief in Support of Defendant Viacom International, Inc.'s Motion to Dismiss at 7-9.
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.* at 9-10.
[50] *Id.*
[51] *Id.*
[52] *Id.* at 11.

Viacom filed Case 7149 against the Harmonix Shareholders on August 23, 2012.[53]

Viacom claimed that the Harmonix Stockholders breached the Merger Agreement.[54]  Viacom

also requested a declaratory judgment that the Determination of the Resolution Accountants is

void and unenforceable due to the Resolution Accountants' fraud or manifest error.[55]  The

Harmonix Stockholders counterclaimed, contending that Viacom breached the Merger

Agreement by failing to pay the amount of the 2007 Earn-Out Payments as set out in the

Determination of the Resolution Accountants.[56]  The Chancery Court entered judgment for the

Harmonix Shareholders and ordered Viacom to pay $298,813,095.00 with interest as 2008 Earn-

Out Payments.[57]  Viacom appealed this decision to the Delaware Supreme Court.[58]  The Supreme

Court affirmed the decision on July 16, 2013.[59]

### C.  PROCEDURAL HISTORY

Mr. Winshall filed this action on June 14, 2015 (the "Complaint").  The Complaint has

four counts.[60]  In Count I, Mr. Winshall claims that Mr. Winshall is entitled to indemnification

under Section 8.6 of the Merger Agreement because Viacom breached the representations,

warranties, covenants and agreements of Merger Agreement. Specifically, Mr. Winshall claims

that Viacom breached the Merger Agreement by (i) not preparing the 2007 and 2008 Earn-Out

Statements within fifteen days of Viacom having all of the information it needed to complete the

Statements per  Section 2.4(a) and Section 2.4(b), (ii) appealing the Determination of the

Resolution Accountants in violation of Section 2.4(c), and (iii) filing Case 7149 challenging the

---

[53] Verified Civil Complaint ¶ 78.
[54] *Id.*
[55] *Id.* ¶ 79.
[56] *Id.*
[57] *Id.* ¶ 81.
[58] *Id.*
[59] *Id.*
[60] *Id.* ¶ 89-121.

11

determination of the Resolution Accountants, for improper purposes of delay, in violation of Section 2.4(e).[61] Mr. Winshall seeks indemnification for the losses Mr. Winshall incurred, including attorney's fees and court costs. [62]

In Count II, Mr. Winshall claims that Viacom breached Section 2.4 of the Merger Agreement by delaying the 2007 and 2008 Earn-Out Statements, which caused Mr. Winshall and the Harmonix Stockholders damages from the tax consequences and lost interest payments of the delay.[63] Mr. Winshall also asserts that Viacom did not provide Mr. Winshall with the additional information that he requested about the Earn-Out Payments in another violation of Section 2.4.[64] Mr. Winshall contends that Viacom fraudulently concealed that it had the information necessary to calculate the Earn-Out Statements because Viacom filed its 10-Q with the SEC in which it provided the concealed information.[65]

In Count III, Mr. Winshall asserts that Viacom breached the implied covenant of good faith and fair dealing by failing to act in good faith with regard to the determination and payment of the Earn-Out Payments, which prevented Mr. Winshall and the Harmonix Stockholders from receiving the benefits they bargained for under the Merger Agreement.[66]

In Count IV, Mr. Winshall claims that Viacom maliciously prosecuted Mr. Winshall when Viacom filed Case 6874 because its intent was to delay the Earn-Out Payments and to pressure Mr. Winshall to settle. Mr. Winshall seeks damages including the costs and expenses from Case 6874 and damages from the delay of the 2008 Earn-Out Payment.[67]

---

[61] *Id.* ¶¶ 91-94.
[62] *Id.* ¶ 96.
[63] *Id.* ¶¶ 97-103.
[64] *Id.* ¶¶ 101.
[65] *Id.* ¶¶ 102.
[66] *Id.* ¶¶ 104-111.
[67] *Id.* ¶¶ 112-121.

On February 29, 2016, the Court denied Viacom's motion to dismiss (the "MTD Opinion").[68] On June 1, 2018 Viacom filed its Opening Brief in Support of Defendant Viacom International Inc.'s Motion for Summary Judgment ("Viacom's Motion"). Then, on July 18, 2018, Mr. Winshall filed Plaintiff's Opposition to Viacom International, Inc.'s Motion for Summary Judgment ("Mr. Winshall's Opposition"). On August 17, 2018, Viacom filed Defendant Viacom International Inc.'s Reply Brief in Further Support of its Motion for Summary Judgment ("Viacom's Reply").

Also on June 1, 2018, Mr. Winshall filed Plaintiff's Opening Brief in Support of Motion for Partial Summary Judgment ("Mr. Winshall's Motion"). Then, on July 18, 2018, Viacom filed Defendant Viacom International Inc.'s Brief in Opposition to Plaintiff Walter A. Winshall's Motion for Partial Summary Judgment ("Viacom's Opposition"). Finally, on August 17, 2018, Mr. Winshall filed its Reply Brief in Support of Plaintiff's Motion for Partial Summary Judgment ("Mr. Winshall's Reply").

### III. PARTIES' CONTENTIONS

#### A. VIACOM'S MOTION

In Viacom's Motion, Viacom requests that the Court grant summary judgment on: (i) Counts I, II and III because they are barred by *res judicata*; (ii) all counts because they are barred by the statute of limitations; and (iii) Count IV because Mr. Winshall has not sufficiently pleaded a valid claim for malicious prosecution.

#### B. MR. WINSHALL'S MOTION

Mr. Winshall asks that the Court grant summary judgment on Counts I and II because no there are no genuine issues of fact and he is entitled to judgment as a matter of law.  Mr.

---

[68] *Winshall v. Viacom Int'l, Inc*., 2016 WL 3462119, at *8 (Del. Super. Feb. 29, 2016).

Winshall also argues that (i) *res judicata* does not bar Counts I, II and III because these claims were not ripe when the Chancery Court Actions were filed, (ii) the Court should toll the statute of limitations because Viacom fraudulently concealed information that Mr. Winshall needed to assert Counts I, II and III, (iii) a three-year statute of limitations applies to claims for malicious prosecution so Count IV is not barred by the statute of limitations, and (iv) Mr. Winshall has sufficiently pleaded Count IV.

## IV. STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[69] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[70] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[71] The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[72] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[73]

---

[69] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[70] *Id.*
[71] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").
[72] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).
[73] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

Where, as here, the parties have filed cross motions for summary judgment and have not argued that there are genuine issues of material fact, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[74]  Neither party's motion will be granted unless no genuine issue of material fact exists and one of the parties is entitled to judgment as a matter of law.[75]

## V. DISCUSSION

### A. COUNTS I-III, EXCEPT AS TO FEES AND COSTS, ARE BARRED BY RES JUDICATA

The doctrine of *res judicata* "prevent[s] a multiplicity of needless litigation of issues by limiting parties to one fair trial of an issue or cause of action which has been raised or should have been raised in a court of competent jurisdiction."[76]  The Supreme Court set out the doctrine of *res judicata*'s elements in *Kossol v. Ashton Condominium Association*:

> First, the same transaction must form the basis for the prior and subsequent suits. Second, the plaintiff must have neglected or failed to assert claims which in fairness should have been asserted in the first action . . . . Upon such a showing, the plaintiff, to prevent dismissal, must then show that there was some impediment to the presentation of the entire claim for relief in the prior forum.[77]

In *Kossol*, the Supreme Court explained that the doctrine of *res judicata* bars litigation between the same parties when the claims in the later litigation arise from the same transaction that was the basis of the original litigation.[78]  Therefore, even if the theory in the later action is different, the claim is still barred if it comes from the same transaction.[79] But, "res judicata does not operate to bar claims based on facts that were not, and could not have been, known to the

---

[74] Super. Ct. Civ. R. 56(h).
[75] *E.I. DuPont de Nemours and Co. v. Medtronic Vascular, Inc.*, 2013 WL 261415, at *10 (Del. Super. Jan. 18, 2013).
[76] *LaPoint v. Amerisource Bergen Corp.*, 970 A.2d 185, 192 (Del. 2009).
[77] *Kossol v. Ashton Condo. Assoc.*, 637 A.2d 827 (Del. 1994) (citations omitted).
[78] *Id.*
[79] *Id.*

plaintiff in the second action at the time of the first action."[80] In the MTD Opinion, the Court found that the *Kossol* test applies to the facts of this case.[81]

In *RBC Capital Markets, LLC v. Education Loan Trust IV*,[82] the Supreme Court held that it is not "invariably true" that two claims involving the same contract come from the same transaction. "A subsequent breach of contract claim will not be treated as identical to an earlier contract claim (and therefore res judicata will not operate as a bar) where the facts underlying the later claim were either unknown or incapable of being known at the time of the earlier action."[83]

In the MTD Opinion, the Court found that the Chancery Court Actions and the claims in the Complaint arose from the 2007 and 2008 Earn-Out Payments under the Merger Agreement.[84] The Court instructed Viacom to develop a factual record that provided why Mr. Winshall should have included Counts I-III in the Chancery Court Actions in order to prevail at the summary judgement stage.[85] The Court also instructed Mr. Winshall to demonstrate what impeded him from bringing the claims in the earlier actions in order to prevail at the summary judgment stage.[86]

### 1. Count I

Mr. Winshall argues that Count I is not barred by *res judicata*. Specifically, Mr. Winshall argues that his claim for indemnification did not accrue until July 16, 2013, when the Delaware Supreme Court made a final determination in the Chancery Court Actions. Mr. Winshall cites

---

[80] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 193 (Del. 2009) (citing *Ambase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d at 73).
[81] *Winshall*, 2016 WL 3462119, at *8.
[82] 87 A.3d 632, 645 (Del. 2014).
[83] *Id.*
[84] *Winshall,* 2016 WL 3462119, at *8.
[85] *Id.*
[86] *Id.*

*LaPoint* for the proposition that an indemnification claim conditioned on a breach of contract does not accrue until there is a final determination on the underlying breach of contract claim.

In response, Viacom argues that the *LaPoint* case only found that a plaintiff was entitled to indemnification for attorneys' fees. Viacom notes that Mr. Winshall has brought claims in Count I for damages based on a breach of contract that preceded the Chancery Court Actions. As such, Viacom contends these contract claims were ripe for a decision in the Chancery Court Actions.[87]

Specifically, Viacom argues that in Case 6074, Mr. Winshall alleged that Viacom caused "more than 18 months of delays" before delivering the 2007 Earn-Out Statement and created "another extended period of delays" before agreeing to the Resolution Accountants.[88] Also, in Case 7149, Mr. Winshall brought a counterclaim for "breach of contract for failure to pay the balance of the 2007 Earn-Out Payment, and failure to pay the entire 2008 Earn-Out Payment."[89] Viacom contends that Mr. Winshall's claim relating to Viacom's failure to release the escrowed funds was the subject of Case 6074, filed in December 2010. In addition, Viacom contends that Mr. Winshall submitted a proposed complaint in December 2010 to the Court of Chancery in which Mr. Winshall alleged that "Viacom unjustifiably delayed turning over its calculations of the earn-out amounts" and that "Viacom unjustifiably delayed the selection of a Resolution Accountant who could determine the amount."[90] Viacom cites the Complaint, in which Mr. Winshall makes similar allegations:

> Plaintiff brings claims for indemnification under the Merger Agreement and
> breach of contract . . . in connection with Viacom's calculated and improper delay
> for years in providing the 2007 and 2008 Earn-Out Statements necessary to

---

[87] Viacom's Mot., p. 32.
[88] *Id.*
[89] *Id.*
[90] *Id.*

calculate the respective Earn- Out Payments and appoint the Resolution Accountants.[91]

In *LaPoint v. Amerisource Bergen Corp.*,[92] the Court of Chancery held that, under the terms of the parties' merger agreement, a claim for indemnification for attorneys' fees became ripe only after a court issued a final determination that plaintiff was entitled to indemnification for the defendant's breach of contract and the defendant failed to indemnify the plaintiff. The Court of Chancery allowed plaintiff to recover on a separate action for attorneys' fees and costs because all events necessary to support plaintiff's indemnification claim had not occurred until after a final determination on the contract claim.

In this case, Merger Agreement Section 8.6 requires Viacom to indemnify Mr. Winshall and the other Harmonix stockholders for Losses that the stockholders sustain as a result of Viacom's breaches of representations, warranties and covenants:

> [Viacom] . . . shall indemnify . . . [the Harmonix stockholders] against any and all Losses actually incurred or suffered by any such Merger Consideration Recipient as a result of: (i) the breach of any representation or warranty of Parent or MergerCo set forth in this [Merger] Agreement . . . and (ii) the breach of any covenant or agreement of Parent or MergerCo contained in this [Merger] Agreement . . . . [93]

The definition of "Losses" includes attorneys' fees and costs. Under Section 8.6, therefore, Viacom is required to indemnify Mr. Winshall for attorneys' fees and costs incurred in litigation for breaches of the representations, warranties, and covenants of the Merger Agreement.

Viacom refused to indemnify Mr. Winshall for Mr. Winshall's attorneys' fees and costs after the Chancery Court Actions. This was a breach of Viacom's obligation to indemnify Mr. Winshall. That obligation was not ripe until there was a final adjudication of Viacom's breach of

---

[91] Compl. ¶ 17.
[92] *LaPoint*, 970 A.2d at 197-98.
[93] Merger Agreement §8.6.

the representations, warranties and covenants of the Merger Agreement. This final adjudication and Viacom's subsequent refusal to indemnify Mr. Winshall are the new substantive bases upon which Mr. Winshall brings its claim for indemnification for attorneys' fees.

Other than the claims for attorneys' fees and costs, Mr. Winshall brought many of the same allegations in Count I in the Chancery Court Actions. Mr. Winshall already recovered losses in some of those actions. All of the allegations were ripe at the time of the Chancery Court Actions and so are barred by *res judicata*.

The record reflects that Mr. Winshall did not raise the indemnification claim in the Chancery Court Actions. Mr. Winshall could not have raised its claim for attorneys' fees in the Chancery Court Actions.  The Court holds that Count I is barred by *res judicata*, except as Count I relates to attorneys' fees and costs.

### 2. *Count II*

Count II is a claim for damages, including tax consequences and lost interest, caused by the delay in obtaining the 2007 and 2008 Earn-Out Statements. These damages allegedly arose because Viacom did not use estimates of the IP Litigation to issue the Earn-Out Statements.

Viacom argues that Mr. Winshall could have asserted the claims in Count II in the Chancery Court Actions. In fact, Viacom contends that Mr. Winshall did assert many of the claims in the Chancery Court Actions.  Specifically, Viacom notes that in Case 6074, Mr. Winshall alleged that Viacom caused "more than 18 months of delays" before delivering the 2007 Earn-Out Statement and created "another extended period of delays" before agreeing to the Resolution Accountants. Viacom also points out that in Case 7149, Mr. Winshall brought a counterclaim for "breach of contract for failure to pay the balance of the 2007 Earn-Out Payment, and failure to pay the entire 2008 Earn-Out Payment."

19

Mr. Winshall does not demonstrate any impediment to bringing these allegations in the earlier Chancery Court Actions. Instead, Mr. Winshall argues that his claims were not ripe during the Chancery Court Actions because he seeks damages for Viacom's delay.

The Court finds that Mr. Winshall has already brought claims for Viacom's delay in issuing the Earn-Out Statements in the Chancery Court Actions. Claims for damages are not reserved solely for this Court. As part of the "clean-up doctrine," Mr. Winshall could have brought the damages claims in Count II in the Chancery Court Actions.[94] This is true as the claims accrued before 2011 when Viacom paid the Earn-Out Payments in full. Moreover, Mr. Winshall did not need to know the precise amount of damages as discovery in the Chancery Court Actions would have provided a liquidated amount. Therefore, Count II is barred by the doctrine of *res judicata*.

### 3. Count III

Count III is a claim for damages, including tax consequences and lost interest, caused by Viacom's purported breach of the implied covenant of good faith and fair dealing regarding the Earn-Out Statements and the determination of the Earn-Out Payments. As in Count II, Mr. Winshall argues that it was not pragmatic to bring the allegations in Count III during the Chancery Court Actions because he seeks damages for Viacom's delay.

The Court finds that Mr. Winshall could have brought the allegations in Count III in the Chancery Court Actions. This is clear because, as with Count II, these claims accrued before 2011 when Viacom paid the Earn-Out Payments in full. The allegations also arose out of the same misconduct at issue in the Chancery Court Actions. Mr. Winshall has also not

---

[94] *See, e.g., Duff v. Innovative Discovery LLC*, 2012 WL 6096586, at *4 (Del. Ch. Dec. 7, 2012).

20

demonstrated any impediment which prevented him from asserting the claims earlier. Therefore, Count III is barred by the doctrine of *res judicata*.

### C. THE STATUTE OF LIMITATIONS, EXCEPT AS TO FEES AND COSTS, BARS COUNTS I-III

Courts apply a three-step test to determine whether a claim is barred by the statute of limitations.[95] First, courts must determine when a cause of action accrues. In contract cases, the cause of action accrues at the time of the breach.[96] Second, courts must determine whether the statute of limitations may be tolled or extended.[97] A statute of limitations may be tolled for reasons such as inherently unknowable injuries,[98] fraudulent concealment,[99] and equitable tolling.[100] Plaintiffs must plead reasons to toll the statute of limitations with specificity.[101] Third, if a tolling exception applies, courts must determine when plaintiff receives inquiry notice of the breach to determine when the limitations period starts running.[102] Inquiry notice exists when plaintiff becomes aware of "facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery [of injury]."[103]

There is a three-year statute of limitations for contract claims.[104] Mr. Winshall argues that his claims accrued as of July 16, 2013 when the Delaware Supreme Court affirmed Case No. 7149 and as of October 8, 2013 when the Delaware Supreme Court affirmed Case No. 6074. As

---

[95] *Wal– Mart Stores Inc. v. AIG Life Ins. Co.*, 860 A.2d 312 (Del.2004).
[96] *See Ambase Corp. v. City Investing Co.,* 2001 WL 167698, at *14 n. 4 (Del. Ch. Feb. 7, 2001).
[97] *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *7 (Del. Ch. Jan. 24, 2005).
[98] *See Isaacson, Stolper & Co. v. Artisan's Savings Bank,* 330 A.2d 130, 132 (Del.1974).
[99] *See Halpern v. Barran,* 313 A.2d 139, 143 (Del. Ch.1973).
[100] *In re Dean Witter P'ship Litigation*, No. CIV. A. 14816, 1998 WL 442456, at *5-6 (Del. Ch. July 17, 1998).
[101] *Young & McPherson Funeral Home, Inc. v. Butler's Home Improvement, LLC*, 2015 WL 4656486, at *1 (Del. Super. Aug. 6, 2015); *Eni Holdings, LLC v. KBR Grp. Holdings, LLC*, 2013 WL 6186326, at *11 (Del. Ch. Nov. 27, 2013).
[102] *Wal– Mart Stores Inc. v. AIG Life Ins. Co.*, 860 A.2d 312 (Del.2004).
[103] *Id.* at 319.
[104] 10 *Del. C.* § 8106.

such, Mr. Winshall contends that Counts I, II, and III are not barred by the three-year statute of limitations because this civil action was filed on June 14, 2015.

### 1. Count I is Barred in Part by the Statute of Limitations

#### a. Attorneys' Fees

Count I for indemnification for attorneys' fees is not time-barred. In *LaPoint*, the parties agreed to an indemnification provision in their merger agreement, which stated that

> [The acquiring company] shall . . . *indemnify,* defend and hold harmless the Company Stockholders . . . from and against any and *all Damages incurred* in connection with, arising out of, resulting from or incident to any *breach* of any covenant, representation, warranty or agreement made by [the acquiring company] in this [Merger] Agreement.[105]

The Delaware Supreme Court found that the statute of limitations on a claim for indemnification for attorneys' fees, based on the provision above, accrued when the Delaware Supreme Court issued its final determination that the defendant had breached the indemnification provision of the merger agreement.[106] The Supreme Court also noted that the claim for indemnification for attorneys' fees became ripe when the defendant failed to pay attorneys' fees after the Delaware Supreme Court's final determination.[107] The Delaware Supreme Court found that the statute of limitations began to run after the claim was ripe.[108]

As in the *LaPoint* case, Mr. Winshall's claim for indemnification for attorneys' fees did not accrue until the Delaware Supreme Court issued its final determination on July 16, 2013 that Viacom was required to indemnify Mr. Winshall. Mr. Winshall's claim was ripe when Viacom failed to pay attorneys' fees and costs after the Supreme Court's determination. So, the statute of

---

[105] *LaPoint*, 970 A.2d at 190.
[106] *Id.* at 198.
[107] *Id.*
[108] *Id.* at 197-98.

limitations on this claim started to run after July 16, 2013. The Complaint was filed on June 14, 2015. Count I for indemnification for attorneys' fees is not time-barred because Mr. Winshall filed the Complaint within three years of July 16, 2013.

### b. Remaining Claims in Count I

In addition to attorneys' fees and costs, Mr. Winshall argues that he is entitled to indemnification for "Taxes" and "diminution of value."[109] At this point in time, these claims are barred by the statute of limitations. In *Certainteed Corp. v. Celotex Corp.*,[110] the Court of Chancery distinguished contractual indemnification from common law indemnification. The Court of Chancery found that claims for contractual indemnification, such as claims for breaches of representations and warranties in merger agreements, accrued at the time of the breach of the contract, unless a tolling exception applies.[111]

Mr. Winshall argues that his claims accrued on July 16, 2013 when the Delaware Supreme Court issued its final determination on the underlying breach of contract claims. Mr. Winshall relies on *LaPoint* for this proposition. In response, Viacom argues that Count I is time-barred. Viacom argues that Mr. Winshall seeks contractual indemnification and so Mr. Winshall's claims accrued at the time of Viacom's breaches of the Merger Agreement in and before 2011.

*Certainteed Corp.* and not *LaPoint* applies to Mr. Winshall's claim for indemnification for other Losses under the Merger Agreement. In *LaPoint*, the plaintiff could not have known that the plaintiff had a valid claim for attorneys' fees until the underlying breach of contract had been resolved. In contrast, Mr. Winshall had all of the information necessary to bring a claim for

---

[109] Mr. Winshall's Opp'n, p. 23 (Mr. Winshall argues that he is entitled to indemnification for "Losses" and has placed the following in bold in the definition of "Losses:" diminution in value, Taxes, attorneys' fees and costs).
[110] 2005 WL 217032, at *3 (Del. Ch. Jan. 24, 2005).
[111] *Id.* at *5.

23

indemnification for Taxes and diminution at the time that Viacom breached the Merger Agreement to cause these Losses.

The Court finds that Mr. Winshall's claims for indemnification for "Taxes," "diminution of value," and other "Losses" are claims for contractual indemnification. This is especially clear as Mr. Winshall's indemnification claims are based on Viacom's delay in issuing the Earn-Out Statements, which is also the basis for Mr. Winshall's breach of contract claims. As in the *Certainteed* case, Mr. Winshall's claims accrued at the time Viacom breached the Merger Agreement. The statute of limitations on these claims began to run at the time of Viacom's breaches, which occurred in or before 2011. The Complaint was filed on June 14, 2015. So, Count I for indemnification for other Losses was not filed within three years of the statute of limitations and is time-barred.

"Taxes" are defined in Section 4.13 of the Merger Agreement as taxes that Harmonix owes.[112] In addition to Mr. Winshall's claims being time-barred, Mr. Winshall is not entitled to indemnification for "Taxes" because Mr. Winshall does not allege that either Harmonix or Viacom breached the Merger Agreement by failing to pay Taxes. Instead, Mr. Winshall's claim for indemnification for Taxes stems from Viacom's delay in paying the Earn-Out Statements, which Mr. Winshall claims caused him to incur greater tax liability.

### 2. Counts II and III are Time-Barred

Mr. Winshall contends that Counts II and III are not time-barred and again cites the *LaPoint* case to support his argument. Specifically, Mr. Winshall argues that Viacom refused to

---

[112] Merger Agreement § 4.13 ("The Company [Harmonix] has paid or caused to be paid all federal, state, local, foreign and other taxes, including income taxes, estimated taxes, alternative minimum taxes, excise taxes, sales taxes, franchise taxes, employment and payroll related taxes, withholding taxes, transfer taxes, and all deficiencies, or other additions to tax, interest, fines and penalties owed by it (collectively, "Taxes")").

make the Earn-Out Payments until the Delaware Supreme Court rejected Viacom's appeal on July 16, 2013 and so the claims accrued on July 16, 2013.

Viacom's breaches of the Merger Agreement and the implied covenant of good faith and fair dealing, on which Counts II and III are based, occurred in 2009, 2010 and 2011. In fact, Mr. Winshall brought many of the same claims in the Chancery Court Actions. So, Counts II and III were ripe in 2011, at the latest, and are barred by the three-year statute of limitations.

### 3. *The Statute of Limitations Is Not Tolled by Fraudulent Concealment*

The Court may toll the statute of limitations if a defendant fraudulently concealed facts that would have put the plaintiff on notice of the defendant's breach through "an affirmative act of concealment or 'actual artifice.'"[113] In the MTD Opinion, the Court asked the parties to answer the following questions relating to Mr. Winshall's claim for fraudulent concealment: (i) "what Viacom knew"; (ii) "whether Viacom was able to prepare the Earn-Out Statements [before 2010]"; and (iii) "when Mr. Winshall found out that Viacom was able to prepare the Earn-Out Statements."[114]

First, Mr. Winshall argues that Viacom had estimated that the IP Litigation would settle for $10 million by no later than June 2009, but it concealed this fact from Mr. Winshall. Specifically, Viacom told Mr. Winshall, before the IP Litigation settled, that the value at which the IP Litigation would settle was "not estimable at this time." Second, Mr. Winshall claims that Viacom was able to prepare the Final 2007 and 2008 Earn-Out Statements by February 28, 2008, and June 22, 2009, respectively. These are the dates that Viacom submitted quarterly earnings reports to the SEC. Third, Mr. Winshall contends that he only learned that Viacom had concealed this information during discovery in this case.

---

[113] *Eni Holdings*, 2013 WL 6186326, at *12 (quoting *In re Dean Witter P'ship Litigation*, 1998 WL 442456, at *5).
[114] *Winshall,* 2016 WL 3462119, at *8.

25

In response, Viacom states that it did not conceal any relevant facts. Specifically, Viacom argues that it learned that the IP Litigation would settle for $10 million on February 24, 2010 and the estimate to which Mr. Winshall refers was merely speculative. Viacom also notes that it kept Mr. Winshall well apprised of its negotiations in the IP Litigation. Viacom cites to the fact that several of Harmonix's shareholders, who are represented by Mr. Winshall, were involved in settlement discussions in the IP Litigation. Viacom also provided the $10M estimate to Mr. Winshall's counsel and to Alex Rigopulos, Harmonix's CEO and shareholder, in a PowerPoint presentation in May 2009. On June 22, 2009, Viacom's then-General Counsel Michael Fricklas sent Mr. Winshall preliminary Earn-Out calculations and stated that they were "similar to the versions of the calculations that [Viacom] shared with Alex [Rigopulos] and [Mr. Winshall's counsel] at our meeting in Cambridge on May 21, 2009." Viacom argues that Mr. Winshall therefore had actual knowledge of the estimate. Finally, Viacom points out that the Complaint does not allege that Mr. Winshall learned any new information after March 9, 2010. Viacom contends that the statute of limitations may not be tolled any later than March 9, 2010.

The Court finds that Mr. Winshall had actual knowledge of Viacom's estimates of the IP Litigation. This is clear because Viacom provided Mr. Winshall with the estimates of the IP Litigation in May 2009. Accordingly, Mr. Winshall's fraudulent concealment claims are not factually, or procedurally, supportable on this record.

### 4. *The Statute of Limitations is Not Tolled by the Doctrine of Continuous Breach*

 "Although a cause of action for breach of contract occurs on the date of the breach, a statute of limitations will not generally bar a continuing cause of action until the contract's termination."[115] "Whether the obligations under a contract are continuous or severable turns on

---

[115] *Bridgestone/Firestone, Inc. v. Cap Gemini Am., Inc.,* 2002 WL 1042089, at *7 (Del. Super. Ct. May 23, 2002).

the parties' intent, which may be ascertained through the contract's terms and subject matter, 'taken together with the pertinent facts and circumstances' surrounding its formation."[116] "The critical inquiry is whether the obligations under the contract are all done for the 'same general purpose.'"[117]

Mr. Winshall contends that the Court should toll the statute of limitations under the doctrine of continuous breach. Mr. Winshall cites *Branin v. Stein Roe Inv. Counsel, LLC*.[118] to support his contention. In *Branin*, the Court of Chancery held that an employer was in continuous breach of its operating agreement by repeatedly declining to indemnify the plaintiff-employee during the course of his litigation against the employer. The Court of Chancery found that the cause of action of indemnification did not accrue until the underlying claims were resolved.

Viacom counters by claiming that the fact that it did not make all relevant payments until after the Delaware Supreme Court's ruling in July 2013 does not mean that it was in continuous breach. Viacom argues that although damages may have continued to accrue, this does not create a continuous breach. Viacom cites *AM General Holdings LLC* v. *Renco Group, Inc.*[119] for this proposition. In that case, the Court of Chancery granted a motion for partial summary judgment because the court found that "[w]hile the alleged breaches were repetitive, they were not 'continuing.'" The Court of Chancery explained that the violations of "specific, identifiable provisions" of a contract in which a plaintiff may assert individual causes of action are not the grounds for a continuous breach.[120] The Court of Chancery noted that "it cannot be the case that

---

[116] *Id.*
[117] *Id.*
[118] *Branin v. Stein Roe Inv. Counsel, LLC*, 2015 WL 4710321, at *7 (Del. Ch. July 31, 2015)
[119] 2016 WL 4440476, at *1-2, *11-13 (Del. Ch. Aug. 22, 2016).
[120] Id. at 13.

a party can unlock the possibility of tolling under the continuing breach doctrine simply by characterizing contractual obligations as collectively contributing to some broader end."[121]

Viacom also claims that if the Court allows Mr. Winshall to recover under a theory of continuing breach, then anytime a vagrant debtor refuses to pay its creditor, the statute of limitations would be tolled indefinitely until the debtor was able to pay. This would render the statute of limitations a nullity.[122] Finally, Viacom cites *Laugelle* v. *Bell Helicopter Textron, Inc.* for the proposition that "[w]here a party allegedly fails to make a payment when due, "a cause of action for breach of contract arises, and the statute of limitations begins to run, *at the time the contract is breached, not when the actual harm occurs*."[123]

Here, as noted above, Mr. Winshall's claims for indemnification for attorneys' fees did not accrue until July 2013. But, the other damages in Counts I, II and III are not conditioned on a finding of a prior breach, so *Branin* is inapposite. Although Viacom may have breached the Merger Agreement multiple times by, for example, appealing the determination of the Resolution Accountants several times, these discrete breaches of a contract do not amount to a continuous breach that tolls the applicable statutes of limitations.

### D. VIACOM IS ENTITLED TO JUDGEMENT ON THE MALICIOUS PROSECUTION CLAIM

In Count IV, Mr. Winshall claims Viacom maliciously prosecuted Mr. Winshall by filing Case 6874. In Case 6874, Viacom sought to recoup the preliminary 2007 Earn-Out Payment Amount that Viacom had paid to the Harmonix stockholders.[124] Viacom argued that it could recoup the Earn-Out Statements because Viacom had revised its calculations of its Gross Profits and the new calculations showed that Gross Profits, an element used in calculating the Earn-Out

---

[121] *Id*. at 12.
[122] *In re Hollman*, 2009 WL 3764220, at *4 (Bankr. E.D. Va. Nov. 10, 2009).
[123] 2014 WL 2699880, at *4 (Del. Super. Ct. June 11, 2014) (emphasis added & citation omitted).
[124] *Viacom Int'l, Inc. v. Winshall*, 2012 WL 3249620, at *5 (Del. Ch. Aug. 9, 2012).

Statements, were negative.[125] Viacom revised its calculations for Gross Profits to reflect that the market value for Harmonix's unsold inventory was much less than Viacom had anticipated (the "Inventory Write-Down") and by deducting the costs of manufacturing unsold goods from Gross Profits.[126] First, Viacom argued that the Court of Chancery, rather than the Resolution Accountants, should decide whether the Inventory Write-Down applied to the Earn-Out Statements. Second, Viacom argued that it was denied a fair hearing because the Resolution Accountants did not consider the Inventory Write–Down.

In Case 6874, the Court of Chancery found that Resolution Accountants "obviously" had the authority to determine whether Viacom had properly raised the issue of the Inventory Write-Down in the dispute before the Resolution Accountants. The Court of Chancery also found that Viacom had not put Inventory Write-Down at issue because Viacom had not included the Inventory Write-Down in its final Earn-Out Statements to the Resolution Accountants. Finally, the Court of Chancery found that the Resolution Accountants had acted properly by not deciding whether the Inventory Write-Down applied the to the Earn-Out Statements.

### 1. *Mr. Winshall has not stated a claim for malicious prosecution*

"With respect to the cause of action for malicious prosecution, such a claim is viewed with disfavor by the Delaware courts, and, therefore, assessed with careful scrutiny."[127] In order to state a claim for malicious prosecution, a plaintiff must allege the following: (1) the institution of civil proceedings; (2) without probable cause; (3) with malice; (4) the termination of the proceedings in the aggrieved party's favor; and (5) damages which were inflicted upon the aggrieved party by seizure of property or other special injury.[128]

---

[125] *Id.*
[126] *Id.*
[127] *Kaye v. Pantone, Inc.,* Del.Ch., 395 A.2d 369 (1978).
[128] *Id.* at 372.

Viacom argues that Mr. Winshall has not stated a claim for malicious prosecution because Mr. Winshall has not shown that (a) Viacom lacked probable cause to initiate Case 6874, (b) Viacom acted with malice, and (c) Mr. Winshall suffered a special injury.

Mr. Winshall counters by claiming that Case 6874 is the "quintessential" case of malicious prosecution. Mr. Winshall relies, however, on only the existence of Case 6874 and factually unsupported conclusory allegations concerning actual malice.[129]

### a. Probable Cause

A plaintiff brings a case with probable cause if the plaintiff "reasonably believes" that the plaintiff has a meritorious claim.[130]

Mr. Winshall alleges that Viacom did not have probable cause to file Case 6874. First, Mr. Winshall contends that Viacom lacked probable cause because the Resolution Accountants had exclusive jurisdiction to resolve disputes over the Earn-Out Statements. Under the Merger Agreement, Viacom could only challenge the determination of the Resolution Accountants if the Resolution Accountants had committed fraud or manifest error.[131] Mr. Winshall argues that Viacom did not allege that the Resolution Accountants acted fraudulently or with manifest error. Mr. Winshall also cites then Chancellor Strine's opinion in Case 6874 to show that Viacom must have known that it could not challenge the Resolution Accountants' determination—"I can find no rational argument why a court, rather than the Resolution Accountants, was required to address these issues." Second, Mr. Winshall argues it was not reasonable for Viacom to believe that Viacom could bring a claim for overpayment. This is clear because Viacom admitted in an

---

[129] The Court has reviewed the factual record cited by Mr. Winshall. Other than Case 6874, Mr. Winshall does not provide any documents or deposition testimony demonstrating that Viacom acted with actual malice. Instead, Mr. Winshall relies on his own testimony from a deposition and the June 22, 2009 letter from Michael Fricklas to Walter A. Winshall. *See* Mr. Winshall's Opposition at 62 n. 87.

[130] *Nevins* v. *Bryan*, 2005 WL 2249520, at *1 (Del. Super. Ct. Sept. 8, 2005) (citation & internal quotations omitted), *aff'd*, 901 A.2d 120 (Del. 2006).

[131] Merger Agreement § 2.4(e).

30

internal email, before it made the preliminary 2007 Earn-Out Payments, that the preliminary 2007 Earn-Out Payments was "undisputed." Third, Mr. Winshall argues that Viacom made the preliminary 2007 Earn-Out Payments voluntarily and so is barred from recovering the payments under the voluntary payment doctrine. The voluntary payment doctrine provides that "where money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying."[132] Fourth, Mr. Winshall argues that Viacom lacked probable cause to file Case 6874 because it filed Case 6874 when the Resolution Accountants' determination was still pending. Mr. Winshall argues that Viacom filed Case 6874 to intimidate the Harmonix stockholders and pressure the stockholders into a settlement before the Resolution Accountants issued their determination.

In response, Viacom contends that it had probable cause to initiate Case 6874 because Viacom needed to preserve its rights to recoup the preliminary 2007 Earn-Out Payments before the statute of limitations expired. Viacom argues that it tried to enter into a tolling agreement to extend the statute of limitations in lieu of initiating Case 6874, but Mr. Winshall rejected the agreement. So, Viacom claims that it did not seek to recover the preliminary 2007 Earn-Out Payment, but instead wanted to toll the statute of limitations to later recover the payments. Next, Viacom argues that it had probable cause to file Case 6874 because it cited a line of cases which suggest that a court, rather than an arbiter such as the Resolution Accountants, had exclusive authority to resolve similar disputes. The Court of Chancery overruled this line of cases in its decision in Case 6874 but found that the cases had been valid authority upon which Viacom could have relied.[133]  Third, Viacom claims that there is no factual evidence that Viacom knew

---

[132] *See Nieves v. All Star Title, Inc.*, 2010 WL 2977966, at *6 (Del. Super. Ct. July 27, 2010).
[133] *Viacom Int'l, Inc. v. Winshall*, 2012 WL 3249620, at *15 (Del. Ch. Aug. 9, 2015).

that it would not prevail in front of the Resolution Accountants and so lacked probable cause to file Case 6974. Finally, Viacom argues that there is no evidence that Viacom did not have a good faith basis to believe that it was entitled to the Inventory Write-Down.

Mr. Winshall cannot sustain a claim for malicious prosecution because, from the record, Viacom had probable cause to file Case 6874. This is clear because Viacom relied upon case law that suggested a court was the appropriate forum to decide whether the Inventory Write-Down applies to the Earn-Out Statements. As such, at the time Viacom filed Case 6874, Viacom could have reasonably believed that the Court of Chancery would resolve its dispute. In addition, Viacom had probable cause to file Case 6874 because Viacom was trying to preserve its rights to challenge the preliminary 2007 Earn-Out Payments before the statute of limitations expired.[134]

### b. Malice

Mr. Winshall has not sufficiently alleged that Viacom acted with malice. A claim is brought with malice if it is "done with a wrongful or improper motive or with a wanton disregard of the rights of that person against who the act is directed."[135] "Malice in a malicious prosecution claim is only considered when there is a lack of probable cause, but it is not when there was probable cause."[136]

The Court has found that Viacom acted with probable cause in filing Case 6874. So, Viacom clearly did not have the requisite malice to support a malicious prosecution claim. Alternatively, Mr. Winshall has relied on conclusory statements to allege that Viacom acted with

---

[134] The Court of Chancery did not find that Case 6874 was a frivolous lawsuit, did not award fees or alike in favor of Mr. Winshall, and even noted that Case 6874 was not that unusual. *Id.* at *1 ("As is often the case when sophisticated parties use the technique of an earn-out procedure to paper over a value gap, the technique has resulted in litigation.").

[135] *Smith v. Kent County Society for the Preservation of Cruelty to Animals, Inc.*, 2016 WL 5404097, at *5 (Del. Super. Ct. Sept. 28, 2016).

[136] *Quartarone* v. *Kohl's Dep't Stores, Inc.*, 983 A.2d 949, 960 (Del. Super. Ct. 2009) (citation omitted).

malice, which are insufficient to factually support a claim for malicious prosecution at the summary judgment stage.

### c. Special Damages

Mr. Winshall has not sufficiently alleged special damages. "[W]hen items of special damage are claimed, they shall be specifically stated."[137] Damages must be "something more than expenses and attorneys' fees incurred in connection with defending the counterclaims."[138]

Mr. Winshall cites *In re First Interstate Bancorp Consol. S'holder Litig.*, a stockholder derivative action in which the Court of Chancery ruled that "[a] special injury is established [1] where there is a wrong suffered by plaintiff that was not suffered by all stockholders generally or [2] where the wrong involves a contractual right of the stockholders, such as the right to vote."[139] Mr. Winshall argues that he has suffered special damages under the second prong of the test in *In re First Interstate Bancorp Consol. S'holder Litig.* because Viacom breached the Merger Agreement when it filed Case 6874. As a result of Viacom's breach, Mr. Winshall alleges that he incurred losses such as adverse tax consequences because the Earn-Out Statements were delayed. Mr. Winshall also argues that he incurred attorneys' fees.

In response, Viacom contends that *In re First Interstate Bancorp Consolidated Shareholder Litigation* is inapplicable because the test in the case is only used to determine whether a stockholder lawsuit against a corporation is direct or derivative. In addition, Viacom argues that Mr. Winshall did not incur special damages because Viacom made most of the Earn-Out Payments before it filed Case 6874 and made the rest of the Earn-Out Payments before the Harmonix stockholders suffered any adverse tax consequences. Finally, Viacom claims that it is

---

[137] Del. Super. Ct. Civ. R. P. 9(g).
[138] *Nevins v. Bryan*, 2005 WL 2249520, at *6 (Del. Super. 2005).
[139] *In re First Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d 851, 860 (Del. Ch. 1998) (quotation omitted and emphasis added).

clear that Mr. Winshall did not suffer special damages because Mr. Winshall stated that he was not intimidated by Viacom's filing Case 6874.

In this case, the fact that Viacom may have breached the Merger Agreement by filing Case 6874 does not necessarily create special damages. As Viacom noted, the test in *In re First Interstate Bancorp Consolidated Shareholder Litigation* does not apply to this case. The test offers a framework for a court to distinguish between stockholders who have suffered damages which are common to other stockholders and so should bring derivative actions and stockholders who have suffered damages which are unique and so should bring direct actions. This distinction is not relevant to determine special damages in this malicious prosecution claim.

Mr. Winshall simply states that he suffered "adverse tax consequences, among other 'Losses'" from Viacom's delay in making the Earn-Out Payments. Adverse tax consequences could be special, or consequential, damages. Mr. Winshall, however, has not specifically alleged the amount or type of damages he suffered. In addition, Mr. Winshall has not specifically stated that he suffered special damages because attorneys' fees do not constitute special damages. So, the Court finds that Mr. Winshall has not sufficiently pleaded special damages.

In conclusion, the Court dismisses Mr. Winshall's malicious prosecution claim because Mr. Winshall has not sufficiently alleged that (a) Viacom lacked probable cause to file Case 6874, (b) Viacom acted with malice, and (c) Mr. Winshall suffered special damages.

### 2. *Count IV is Not Barred by the Statute of Limitations*

Count IV is not time-barred. "[A] court interpreting the Delaware [statute of] limitations scheme must focus on the particular injury suffered, as opposed to the nature of the cause of action."[140] 10 *Del.C.* § 8119 states that "[n]o action for the recovery of damages upon a claim for

---

[140] *Smith v. Goldstein*, 447 F. Supp. 1244, 1246 (D. Del. 1978).

alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained . . . ."[141]  Courts have defined personal injuries as injuries to "a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health and his reputation."[142]  Section 8106 of Title 10 states, "no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action."

Mr. Winshall argues that a three-year statute of limitations applies to this malicious prosecution claim. Mr. Winshall cites *Smith v. Goldstein*,[143] in which the Federal District Court for the District of Delaware found that a three-year statute of limitations applied to a malicious prosecution claim. In the *Smith* case, the court found that the two-year statute of limitations in Section 8119 applied only to malicious prosecution claims where the plaintiffs had suffered personal injuries.  Instead, the court applied the three-year statute of limitations in Section 8106 because the plaintiff had suffered injuries to his business or possessions. Mr. Winshall argues that his claim for malicious prosecution is a claim for unrecovered damages, rather than personal injuries, so a three-year statute of limitations under Section 8106 applies.

Viacom argues that a two-year statute of limitations applies to Count IV. Viacom cites *Cole* v. *Del. League for Planned Parenthood, Inc.*,[144] for the proposition that "Section 8119 [the two-year statute of limitations] applies to all claims for personal injury, without exception, and 'regardless of the theoretical basis underlying the requested remedy.'" Viacom also cites *Spence*

---

[141] 10 *Del.C.* § 8119.
[142] *McNeill v. Tarumianz*, 138 F.Supp. 713, 716 (D.Del.1956) (citing 1 W. Blackstone, Commentaries 129 (10th ed. 1787)).
[143] 447 F. Supp. 1244, 1247 (D. Del. 1978) (applying Delaware state law).
[144] 530 A.2d 1119, 1123 (Del. 1987).

v. *Spence*,[145] in which the Delaware Superior Court applied Section 8119 to a malicious prosecution claim for personal injury. In that case, the plaintiff alleged malicious prosecution because the defendant had filed a protection from abuse complaint and a criminal harassment complaint against the plaintiff.

Next, Viacom cites *Baize* v. *Vincent*,[146] in which the Delaware Superior Court applied Section 8119 to bar a malicious prosecution claim for personal injury. The Court there found that the plaintiff's claim was barred because the plaintiff's cause of action accrued when the underlying criminal charges were adjudicated more than two years earlier. Finally, Viacom cites *Anderson* v. *Anderson-Harrison*,[147] in which the Delaware Superior Court applied Section 8119 to a claim for personal injury. In that case, the court found that the plaintiff had a claim for personal injury because the plaintiff allegedly suffered reputational damages and emotional distress because the defendant had misappropriated the plaintiff's sperm. Viacom argues that the Court should apply a two-year statute of limitations under Section 8119 because Mr. Winshall's alleged harms are for personal injuries. Specifically, Viacom argues that filing Case 6874 in order to recoup the preliminary 2007 Earn-Out payments and threatening that the Harmonix stockholders may suffer adverse tax consequences if the Earn-Out payments are delayed raise a claim for personal injury.

The three-year statute of limitations under Section 8106 applies to this case. Section 8119 does not apply because Mr. Winshall's claim for loss of the preliminary Earn-Out Statements and adverse tax consequences is not a claim for personal damages. This is clear because Mr. Winshall's alleged losses are not losses to his life, limbs, body, health or reputation. Instead, Mr.

---

[145] 2012 WL 1495324, at *3, n.15 (Del. Super. Ct. Apr. 20, 2012).
[146] 2015 WL 3507960, at *4 (Del. Super. Ct. May 27, 2015).
[147] 2013 WL 4492797, at *4 (Del. Super. Ct. Aug. 15, 2013).

Winshall's alleged losses are for damages to his property, i.e. financial losses, which fit within Section 8106's inclusion of "damages caused by an injury unaccompanied with force." The cases that Viacom cites are inapposite because those cases address claims for personal injuries. For example, in *Cole* v. *Del. League for Planned Parenthood, Inc.*,[148] the Delaware Supreme Court specified that Section 8119 applied rather than Section 8106 because the plaintiff's claim was for personal injuries, rather damages for loss of property.

Both parties agree that Count IV accrued at the termination of Case 6874 on June 15, 2012. Mr. Winshall filed the Complaint on June 14, 2015. Count IV is not barred by the statute of limitations because Mr. Winshall filed the Complaint within three years of the date on which the cause of action accrued.

## VI. CONCLUSION

For the reasons set forth above, the Court **GRANTS** in part and **DENIES** in part Viacom's Motion. Judgment is entered on Counts II, III, and IV. Partial judgment is entered on Count I. The Court will allow Count I to proceed as to attorneys' fees and costs as that part of Count I is not barred by the statute of limitations or *res judicata*.

Additionally, for the reasons set forth above, the Court **DENIES** Mr. Winshall's Motion on Counts I and II.

**IT IS SO ORDERED.**

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeXpress

---

[148] 530 A.2d 1119, 1123 (Del. 1987).